**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., CBS BROADCASTING INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK TELEVISION, LLC, TELEMUNDO NETWORK GROUP LLC, WNJU-TV BROADCASTING LLC, | CASE NO. 1:13-mc-00059-JSS<br><br>Related to Case No:12-cv-01540 (S.D.N.Y.) |
| Plaintiffs, | |
| v. | |
| AEREO, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY SYNCBAK, INC.'S**
**MOTION TO QUASH SUBPOENAS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................ 7

I.   THE FEDERAL RULES PLACE SIGNIFICANT LIMITS ON DISCOVERY
     FROM NON-PARTIES ....................................................................................... 7

II.  THE AEREO SUBPOENAS ARE UNDULY BURDENSOME ...................................... 9

III. COMPLIANCE WITH THE AEREO SUBPOENAS WOULD CAUSE
     COMPETITIVE INJURY TO SYNCBAK ............................................................ 12

IV.  AEREO DOES NOT NEED THE INFORMATION SOUGHT AND IT IS NOT
     RELEVANT TO AEREO'S DEFENSE................................................................. 13

     A.   The Fact That Aereo Has Moved For Summary Judgment Shows That It
          Has No Need For Any Further Discovery ............................................. 13

     B.   Aereo Has No Legitimate Need For Confidential Technical Information
          from A Competitor................................................................................. 14

     C.   The Discovery Sought Has No Bearing On The Parties' Claims Or
          Defenses ................................................................................................ 15

CONCLUSION............................................................................................................ 16

# TABLE OF AUTHORITIES

## CASES

*Asset Value Fund Ltd. P'ship v. Care Grp., Inc.*,
No. 97 Civ. 1487 (DLC)(JCF), 1997 WL 706320
(S.D.N.Y. Nov. 12, 1997) ............................................................................. 9

*Convolve, Inc. v. Dell, Inc.*,
No. C 10-80071 WHA, 2011 WL 1766486 (N.D. Cal. May 9, 2011) ................... 8, 12, 15

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998) ......................................................................... 8

*Eng-Hatcher v. Sprint Nextel Corp.*,
No. 7 Civ. 7350 (BSJ) (KNF), 2008 WL 4104015 (S.D.N.Y. Aug. 28,
2008) ..................................................................................................... 11

*Filiatrault v. Comverse Tech., Inc.*,
275 F.3d 131 (1st Cir. 2001) ......................................................................... 13

*Fleck v. Neurosurgical & Spinal Surgery Assocs., P.C.*,
No. 10-5072, 2012 WL 1635252 (D.S.D. May 9, 2012) ................................... 14

*Fraserside IP LLC v. Gamma Entm't*,
286 F.R.D. 416 (N.D. Iowa 2012) ........................................................... 8, 9, 10

*Harmon v. City of Kansas City*,
No. 97-0411-CV-W-3, 1998 U.S. Dist. LEXIS 4757 (W.D. Mo. Apr. 2,
1998), *rev'd in part on other grounds* 197 F.3d 321 (8th Cir. 1999) .............. 13

*Hofer v. Mack Trucks, Inc.*,
981 F.2d 377 (8th Cir. 1992) ......................................................................... 16

*Hunter v. Ford Motor Co.*,
Civ. No. 08-4980, 2010 WL 3385225 (D. Minn. July 28, 2010) ...................... 13

*Katz v. Batavia Marine & Sporting Supplies, Inc.*,
984 F.2d 422 (Fed. Cir. 1993) ....................................................................... 15

*Klos v. Haskell*,
835 F. Supp. 710 (W.D.N.Y. 1993), *aff' on other grounds*, 48 F.3d 81
(2d Cir. 1995) ......................................................................................... 14

*Micro Motion, Inc. v. Kane Steel Co.*,
894 F.2d 1318 (Fed. Cir. 1990) ................................................................ 8, 15

*Miscellaneous Docket Matter 1 v. Miscellaneous Docket Matter 2*,
    197 F.3d 922 (8th Cir. 1999) ........................................................................... 8

*Musarra v. Digital Dish, Inc.*,
    Civil Action No. 2:05-CV-545, 2008 WL 4758699 (S.D. Ohio Oct. 30,
    2008) ............................................................................................................... 9

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
    No. 03 Civ. 1382 (RWS), 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ..................... 17

*Reed v. Bennett*,
    193 F.R.D. 689 (D. Kan. 2000) .............................................................. 11, 12

*Roberts v. Shawnee Mission Ford, Inc.*,
    352 F.3d 358 (8th Cir. 2003) ........................................................................... 7

*Thompson v. Reg'l West Med. Ctr.*,
    No. 8:06-CV-581, 2007 WL 3232603 (D. Neb. Oct. 31, 2007) ...................................... 14

*Zalewski v. T. P. Builders*,
    875 F. Supp. 2d 135 (N.D.N.Y. 2012) ............................................................. 14

# RULES

Fed. R. Civ. P. 26(b)(2)(C)(i) .............................................................................. 8

Fed. R. Civ. P. 30(b)(6) ...................................................................... 5, 8, 11

Fed. R. Civ. P. 45(b)(1) .................................................................................... 5

Fed. R. Civ. P. 45(c)(1) .......................................................................... 1, 2, 7, 16

Fed. R. Civ. P. 45(c)(3) ..................................................................................... 1

Fed. R. Civ. P. 45(c)(3)(A)(iv) ....................................................................... 7, 9

Fed. R. Civ. P. 45(c)(3)(B)(i) .......................................................................... 7, 14

Fed. R. Civ. P. 45(c)(3)(C) ............................................................................... 7

# MISCELLANEOUS

9 MOORE'S FEDERAL PRACTICE § 30.25 (4th ed. 2012) ................................................ 8

11 MOORE'S FEDERAL PRACTICE § 56.103 (4th ed. 2012) .......................................... 13

Pursuant to Federal Rule 45(c)(3), Non-Party Syncbak, Inc. ("Syncbak"), by and through its undersigned counsel, brings the present Motion to Quash Subpoenas for documents and deposition testimony served on it by Aereo, Inc. ("Aereo"), the Defendant in a copyright infringement action pending in the Southern District of New York, and in which Syncbak has no involvement (the "Action").

## PRELIMINARY STATEMENT

Aereo served Non-Party Syncbak with two Subpoenas (attached as Exhibits 1 and 2 to the Klausner Declaration) demanding burdensome discovery into, among other things, its confidential business relationships and competitively sensitive technology. The topics of these Subpoenas are expansive, vague, and appear completely unconnected to the claims and defenses presented in the Action. Indeed, on May 14, 2013, Aereo moved for summary judgment in the Action, taking the position that there are no material disputed facts in the Action and that based on the discovery taken as of that date, Aereo is entitled to judgment as a matter of law on the Plaintiffs' single count for copyright infringement. Having moved for summary judgment, Aereo has no conceivable legitimate need for the extensive set of documents it demands, let alone a burdensome deposition of Syncbak regarding its business relationship with one of the Plaintiffs in the Action, all aspects of Syncbak's proprietary and highly confidential technology (Syncbak competes directly with Aereo), and any mention in Syncbak's files of Aereo, its technology, or its founder. Aereo's Subpoenas amount to a classic, and improper, attempt to use third party discovery as a means to impose a significant burden on, and get a free peak under the hood of, a competitor's business. The burden, expense and competitive harm to Syncbak from the proposed discovery significantly outweighs any possible benefit to Aereo, and therefore the subpoenas should be quashed. Additionally, in light of Aereo's refusal to withdraw, adjourn or narrow the scope of the Subpoenas, Aereo and its counsel should be required to reimburse Syncbak for its costs and attorneys' fees incurred in connection with this Motion due to their failure to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena[s]," as required by Rule 45(c)(1).

# BACKGROUND

## *Syncbak*

Syncbak is a start-up technology company based in Marion, Iowa. Syncbak has only one office and has grown from one employee at its inception to approximately twenty-four employees today. Syncbak operates at a loss. Declaration of Herb Skoog in Support of Non-Party Snycbak's Motion to Quash ("Skoog Decl.") ¶ 2. Syncbak has developed a technology that enables television broadcasters to stream live or recorded television shows to individuals on mobile Internet enabled devices such as cell phones and tablet computers. Syncbak's technology is embedded at television stations, and thereby operates only with the permission of each television station. Syncbak does not use broadcasters' over the air transmissions to deliver content and thus does not rely on the use of antennas as part of its technology. While the market for live television broadcasts that can be watched on mobile devices currently has several players, Syncbak believes that it is the only technology in use that determines where a user is located at the time the user seeks to access a show to ensure that the user can only view local programming. *Id.* ¶ 3. Because of the promise that this technology offers, Syncbak has attracted significant attention from the investment community, and counts the National Association of Broadcasters, the Consumer Electronics Association, and CBS Corporation among its strategic investors. It also has attracted the attention of prominent Iowans and is proud to have John Papajohn as a member of its Board of Directors. Approximately half of its investors are from Iowa. *Id.* ¶ 4. Despite the attention it has received, Syncbak still is very much a start-up operation. Its technology is in development and testing mode, and it is still seeking financing in order to support such work. *Id.* ¶ 5.

### The Action Against Aereo

Syncbak is a stranger to the Action. Accordingly, its knowledge of the case is limited to media accounts and information contained in publically-filed pleadings. On the basis of these sources, it is Syncbak's understanding that Aereo operates a service that intercepts broadcast television signals using multiple antennas, alters their format, and then retransmits them, for a fee, over the Internet to individuals on their mobile devices. Declaration of Tonia Ouellette Klausner in Support of Non-Party Syncbak's Motion to Quash Subpoenas ("Klausner Decl.") Ex. 3. (Compl.) ¶¶ 2, 21. Aereo is not licensed or otherwise authorized by the television broadcasters that own the programming to use their content in this manner. *Id.* ¶ 25. In the Action, a number of major television networks (including CBS, ABC and NBC) allege that Aereo's service infringes their copyrights in the programming that Aereo utilizes in its service. *Id.* ¶ 1. The Complaint asserts a single count of copyright infringement (*id.* ¶¶ 28-38), although the plaintiffs have pending a motion to amend seeking to clarify that such count pleads both direct and indirect liability. Klausner Decl. Ex. 4 (docket) at Dkt. 191, 192.

There has been extensive discovery and extensive discovery disputes in the Action. Aereo sought from the Plaintiffs broad discovery, including all documents concerning any technology similar to Aereo's. Plaintiffs resisted production and the Magistrate Judge overseeing discovery in the Action ordered that Plaintiffs need only provide such documents concerning harm caused by or consumer research on "unlicensed technologies that provide for the transmission of plaintiffs' copyrighted works over the Internet from January 2010 to the present." Klausner Decl. Ex. 5 at ¶ 3 (Order of Mar. 29, 2013). The discovery deadline in the Action is June 14, 2013. *Id.* Ex. 4. Dkt. 172 (Order of Apr. 1, 2013).

### The CBS Press Release and Aereo's Responsive Discovery

On April 22, 2013, CBS issued a press release announcing its strategic minority investment in Syncbak. Klausner Decl. Ex. 6 (press release). The press release stated: "Using location–based authentication technology, Syncbak enables local television stations to stream their signal to in-market consumers. In doing so, Syncbak offers broadcast networks a seamless

solution to replicate existing national, local and affiliate partnerships on the Internet and mobile devices." On April 24, 2013, Aereo served a Fourth Set of Requests for the Production of Documents and Things on the Plaintiffs. Those requests seek, inter alia,

"4. All documents that refer to, reflect, and/or concern an investment by CBS Broadcasting Inc., and/or CBS Studios Inc. (collectively "CBS"), in Syncbak In.("Syncbak"), including without limitation, the negotiation of the terms of CBS's investment, the function and features of Syncbak's technology platform, and Syncbak's use of location-based authentication technology." *Id.* Ex. 9 (Fourth Request for Production of Documents).

### *The Aereo Subpoenas to Syncbak*

On April 25, 2013, Aereo served two subpoenas on Syncbak issued out of the Southern District of Iowa, but calling for production and a deposition appearance in the Northern District of Iowa. The first subpoena demanded that Syncbak produce the following four broad categories of documents:

1. All Documents concerning information and details relating to an investment in Syncbak by CBS Broadcasting Inc., CBS Studios Inc. and/or their parents, affiliates or related companies (collectively "CBS").

2. All Documents concerning negotiations between CBS and Syncbak with respect to, among other things, the terms of CBS's investment in Syncbak and any agreements reached between CBS and Syncbak.

3. All Documents concerning the function and features of Syncbak's technology, including but not limited to Syncbak's use of location-based authentication technology.

4. All Documents concerning communications regarding Aereo, Chaitanya ("Chet") Kanojia, and/or the Aereo Technology.

Klausner Decl. Ex. 7.

The second subpoena demanded that Syncbak produce one or more witnesses prepared to testify about Syncbak's knowledge of four topics. Rather than specify the subjects on which

sworn testimony is sought on behalf of the company with the particularity required by Rule 30(b)(6), Aereo merely set forth as deposition topics essentially the same four overly-broad categories set forth in its document subpoena:

1. Information and details relating to an investment in Syncbak by CBS Broadcasting Inc., CBS Studios Inc. and/or their parents, affiliates or related companies (collectively "CBS").

2. Negotiations between CBS and Syncbak with respect to, among other things, the terms of CBS's investment in Syncbak and any agreements reached between CBS and Syncbak.

3. The function and features of Syncbak's technology, including but not limited to, Syncbak's use of location-based authentication technology.

4. Documents or communications regarding Aereo, Chaitanya ("Chet") Kanojia, and/or the Aereo Technology.

Klausner Decl. Ex. 8.

Following notice from Syncbak's counsel that the original subpoenas were issued out of the wrong district, Aereo withdrew them and on May 9, 2013 it served the new Subpoenas issued out of this District, but otherwise are substantively identical to the original subpoenas. Klausner Decl. Exs. 1 & 2. Neither the original nor the replacement deposition Subpoena was accompanied by the fees for attendance and mileage, as required by Rule 45(b)(1). Klausner Decl. ¶ 8.[1]

### *Aereo's Motion for Summary Judgment*

Just three business days after service of the Subpoena, on May 14, 2013, Aereo filed a motion seeking summary judgment on the Plaintiffs' infringement claims. Klausner Decl. Exs.

---

[1] Aereo's service of the deposition Subpoena without the Fed. R. Civ. P. 45(b)(1) required fees for Syncbak's deposition attendance and mileage, provides a further reason for granting this Motion to Quash.

10 & 11. In those papers Aereo represents that "[t]he facts necessary for this Court to decide this case on summary judgment are limited, and are not in dispute." *Id.* Ex. 11 at 3. Aereo argues that it should be granted summary judgment based on the extensive discovery already taken in the case. *See, e.g., id.* at 5-6. Nowhere in its brief does Aereo address any technologies similar to Aereo's, let alone any similar technologies that are authorized by broadcasters, which have no apparent connection to whether Aereo or its users infringe any of the Plaintiffs' copyrights. *See generally, id.*

### *Aereo's Refusal to Withdraw, Adjourn or Narrow the Subpoenas*

Prior to filing this motion, Syncbak counsel contacted Aereo counsel in the hope that Aereo would agree to withdraw its Subpoenas in light of its pending motion for summary judgment. Klausner Decl. ¶ 11. Aereo counsel refused, claiming that discovery from Syncbak was proper because discovery had not been stayed in the Action and was closing on June 14, 2013. *Id.* ¶ 13. Aereo counsel could not dispute that none of the arguments in its pending summary judgment motion relied upon or necessitated information pertaining to Syncbak, but Aereo counsel essentially took the position that it had to obtain discovery from Syncbak just in case the Plaintiffs put in papers that somehow make such information relevant. Syncbak counsel suggested that in that case Aereo adjourn the due dates on the Subpoenas until after Plaintiffs file their papers so that Syncbak would not be burdened in the event the information sought never became relevant or necessary, but this proposal was rejected. *Id.* Regarding the substance of the requests, although Aereo counsel acknowledged that it also has sought from the CBS Plaintiff much of the information it is seeks from Syncbak, they took the position that because CBS has refused to produce such documents, Aereo is entitled to obtain the same information from a non-party, rather than allowing the Judge presiding in the Action to determine whether such information should be produced by CBS. *Id.* ¶ 14. During the call Syncbak's counsel also raised the burden imposed by the Subpoenas given the broad language used in the requests. Aereo counsel said that they would not limit the scope of the requests asking for every single document concerning the CBS negotiations and investment because Syncbak had not determined the

volume of such documents. *Id.* ¶ 15. In other words, they took the position that even if their requests sought such irrelevant information as messages to return calls, Syncbak should have to search for and produce all such documents unless it had first determined that the volume of all investment and negotiation-related documents would be unduly burdensome to produce. As to the broad request for all documents and information concerning the function and features of Syncbak's technology, first Aereo's counsel indicated they would consider trying to narrow the scope of the requests, but then they said that if Syncbak was going to take the position that no discovery from Syncbak should be had in light of Aereo's pending motion for summary judgment, they did not want spend the time trying to come up with more specific and less burdensome requests. *Id.*

## ARGUMENT

### I. THE FEDERAL RULES PLACE SIGNIFICANT LIMITS ON DISCOVERY FROM NON-PARTIES

Non-parties are afforded special protections against the time and expense of complying with subpoenas. A party issuing a subpoena is required "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and if they don't, the issuing court "must" impose sanctions. Fed. R. Civ. P. 45(c)(1). The issuing court also is required to quash or modify a subpoena that is unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A)(iv); *see also Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003) (court properly denies discovery where "the burden or expense of the proposed discovery outweighs its likely benefit"; affirming order quashing subpoenas that appeared to have been served in furtherance of "fishing expedition"). It further may quash or modify a subpoena that seeks confidential commercial information, or order appearance or production under specified conditions if the serving party "(i) shows a substantial need for the testimony or material that cannot be otherwise be met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(c)(3)(B)(i), 45(c)(3)(C).

A showing of relevance alone is not adequate when seeking discovery from a non-party. Rather, "'[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'" *Miscellaneous Docket Matter 1 v. Miscellaneous Docket Matter 2*, 197 F.3d 922, 925 (8th Cir. 1999) (affirming order quashing subpoena based on lack of relevance and need, and potential harm to subpoenaed party) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)). This is because where non-party discovery is sought, "'concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *Id.* at 927 (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 171 (1st Cir. 1998)). Where a subpoena calls for the production of information about confidential technology, the non-party should not be required to provide such information "without a clear-cut need and a subpoena narrowly drawn to meet that need." *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011).

In addition, this Court has the discretion to quash any subpoena if the discovery it seeks is "unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also Fraserside IP LLC v. Gamma Entm't*, 286 F.R.D. 416, 421 (N.D. Iowa 2012) (quashing subpoena as "cumulative and unnecessary"). Likewise, a court may quash or modify a subpoena that fails to designate Rule 30(b)(6) deposition topics with the requisite specificity. 9 MOORE'S FEDERAL PRACTICE § 30.25[2] (4th ed. 2012) ("The court may quash a Rule 30(b)(6) deposition notice for failure to specify the areas of inquiry with reasonable particularity").

As described in detail below, the Subpoenas should be quashed for numerous reasons. They seek to impose unreasonable burdens on Syncbak, a non-party, seek highly confidential and competitively sensitive information of a competitor without any showing of particularized need, and fail to set forth the 30(b)(6) topics with the requisite specificity, while at the same time the information sought is not relevant or necessary for Aereo to defend the Action.

Accordingly, the Subpoenas should be quashed and Aereo and its counsel should be ordered to reimburse Syncbak for its costs and attorneys' fees incurred in connection with the Subpoenas, including this Motion (Syncbak will supplement this Motion with a fee affidavit and supporting fees statements).

## II.    THE AEREO SUBPOENAS ARE UNDULY BURDENSOME

Aereo's Subpoenas are unduly burdensome in several respects, which requires the Court to quash or modify them. *See* Fed. R. Civ. P. 45(c)(3)(A)(iv) ("On timely motion, the issuing court must quash or modify a subpoena that . . . subjects a person to undue burden.").  First, the document Subpoena calls for the production of :  (1) "All Documents concerning information and details relating to an investment in Syncbak" by CBS, and (2) "All Documents concerning negotiations between CBS and Syncbak with respect to, among other things the terms of CBS's investment in Syncbak and any agreements reached between CBS and Syncbak."  These requests are vastly overbroad in that they seek "all documents concerning" rather than narrowly focused requests about any relevant aspect of the investment and/or negotiations that Aereo needs discovery of as a necessary part of its defense.  Moreover, these requests are unduly burdensome to Syncbak because Aereo can seek, and already has sought, the same information from the CBS Plaintiffs in the Action.  *See* Klausner Decl. Ex. 9.  Even if CBS has refused to produce this information, Aereo's remedy is to move to compel production and allow the Court presiding over the action to determine whether this information is properly discoverable by Aereo, not to seek the same information from a non-party.  Because, much of the discovery that Aereo seeks from Syncbak is duplicative and cumulative of discovery that it has requested from the CBS Plaintiffs, it is unduly burdensome and therefore the Subpoena should be quashed.  *See, e.g.*, *Fraserside*, 286 F.R.D. at 421 (quashing subpoena seeking information that could be obtained from a party); *Asset Value Fund Ltd. P'ship v. Care Grp., Inc.*, No. 97 Civ. 1487 (DLC)(JCF), 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997) (quashing subpoena that bore no "substantive differences" from document request served on party); *Musarra v. Digital Dish, Inc.*, Civil Action No. 2:05-CV-545, 2008 WL 4758699, at *4 (S.D. Ohio Oct. 30, 2008) ("[T]he Court will not

impose on this non-party the burden of producing documents presumably available to plaintiffs from a party to this litigation.").

Second, the document Subpoena is unduly burdensome to the extent that it seeks (3) "All Documents concerning the function and features of Syncbak's technology, including but not limited to, Syncbak's use of location-based authentication technology," and (4) "All Documents concerning communications regarding Aereo, Chaitanya ("Chet") Kanojia, and/or the Aereo Technology." Fully responding to these requests would require a collection and review of all email and essentially every other document in Syncbak's possession given that Syncbak's technology is its business. Syncbak does not store emails or documents on a central server, so it would have to hire an outside vendor to come in and collect separately from each employee, and then pay attorneys to review the collected emails and documents. Syncbak does not have the financial resources for this and it would be extremely disruptive to have every employee's computer tied up during the collection. Skoog Decl. ¶ 5. Aereo's failure to narrowly tailor its document requests provides ample grounds to quash the Subpoena. *See, e.g., Fraserside*, 286 F.R.D. at 421.

Third, compliance with the deposition Subpoena also would impose an undue burden on Syncbak. It would be extremely disruptive and burdensome for Syncbak to produce witnesses to testify on the very broad topics set forth in Aereo's deposition Subpoena. Syncbak would likely have to send three different people to testify regarding the topics in the Subpoena – one to answer questions about the CBS negotiations and investment, another to answer questions about the function and features of Syncbak's technology, and a third who would have to review and investigate the meaning of every document in Syncbak's possession that mentions "Aereo" and/or "Chaitanya Kanojia." Given the small size of Syncbak, it would put a significant drain on Syncbak's resources to have three people spending possibly days preparing for and sitting for the extensive corporate deposition sought by Aereo. Skoog Decl. ¶ 6.

Finally, Aereo's deposition Subpoena is unduly burdensome because it utterly fails to "describe with reasonable particularity the matters for examination" as required by Fed. R. Civ. P. 30(b)(6). Syncbak can hardly be expected to prepare a witness to testify about (1) any and every aspect of CBS's investment; (2) any conversation or email exchanged during the negotiations with CBS and every detail of the agreement that ultimately was reached; (3) every aspect of how Syncbak's technology functions, any question Aereo might have about each feature of the technology, and the detailed workings of its proprietary location – based authentication technology; and (4) every document that Syncbak possesses, and every communication anyone at the company has had regarding Aereo, its founder, and/or any aspect of Aereo's technology. Given the generality of Aereo's requests, its counsel could potentially ask almost any question about Syncbak, its technology, or its business, and then seek to hold Syncbak in contempt for failure to guess at what information Aereo wanted. As courts have recognized, this manner of "overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task" as "[w]here… the defendant cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000); *see also Eng-Hatcher v. Sprint Nextel Corp.*, No. 7 Civ. 7350 (BSJ) (KNF), 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) (same). As written, a deposition on these topics would require the witness to commit to memory every meeting held or document exchanged between Syncbak and CBS. He or she would also need to become expert on the inner workings of all "features" of Syncbak's proprietary technology and talk to every person at the company to determine if they have ever had a "communication regarding Aereo" and then memorize the substance of every such communication. It would take weeks for Syncbak witnesses to be fully prepared to testify on these broad topics. Under similar circumstances, courts have exercised

their discretion to quash in their entirety such overly broad and unduly burdensome subpoenas to non-parties. *See, e.g., Reed*, 193 F.R.D. at 692 (quashing overbroad 30(b)(6) subpoena in its entirety); *Convolve*, 2011 WL 1766486, at *2 (quashing subpoena in its entirety and noting that "[r]equests to non-parties should be narrowly drawn to meet specific needs for information").

## III. COMPLIANCE WITH THE AEREO SUBPOENAS WOULD CAUSE COMPETITIVE INJURY TO SYNCBAK

Full compliance with the Subpoenas' requests for all information concerning Syncbak's technology also would cause severe competitive injury to Syncbak, yet, as explained below, the information sought is neither relevant nor necessary to Aereo's defense. Aereo is a direct competitor to Syncbak. The Aereo Subpoenas specifically seek information about the function and features of Syncbak's proprietary and highly confidential technology, including its location-based authentication technology, a technology that Aereo does not use. Skoog Decl. ¶ 7. Syncbak has taken great measures to protect the confidentiality of its technology. *Id.* ¶ 8. Explaining to a direct competitor how Syncbak's location-based authentication technology works would be the equivalent of Coca Cola providing its secret formula to Pepsi. Beyond the location-based authentication aspect of its technology, Syncbak would suffer severe competitive injury if it is required to provide any confidential information concerning the details of how its technology works to a direct competitor. Syncbak believes its technology enables a product that will provide a vastly superior user experience to that offered by Aereo. It should not be required to provide Aereo with information that Aereo can use to take away this competitive advantage. *Id.* ¶ 7. Aereo has no legitimate need for this information, let alone the required clear cut need and a subpoena narrowly drawn to meet that need. Under such circumstances, the Court should quash the Subpoenas. *See, e.g., Convolve*, 2011 WL 1766486, at *2-3 (quashing subpoenas

seeking confidential information from non-party where no showing of a clear-cut need, and noting harm to non-party from disclosure even under a protective order).

## IV. AEREO DOES NOT NEED THE INFORMATION SOUGHT AND IT IS NOT RELEVANT TO AEREO'S DEFENSE

While complying with the Subpoenas would be unduly burdensome to Syncbak and subject it to competitive injury, Aereo has no need for the information sought, which is not even relevant to Aereo's defenses.

### A. The Fact That Aereo Has Moved For Summary Judgment Shows That It Has No Need For Any Further Discovery

As a preliminary matter, Aereo has already filed for full summary judgment on the claims in the Action, which reflects that it believes it has all the discovery it needs to demonstrate no disputes of material fact and that it is entitled to judgment. *See* 11 MOORE'S FEDERAL PRACTICE § 56.103[3] at 56-281 (Matthew Bender 3d ed.) (by moving for summary judgment party represents "it has enough information to show that there are no genuine disputes as to any material facts and that [it] is entitled to judgment as a matter of law."); *see also Harmon v. City of Kansas City*, No. 97-0411-CV-W-3, 1998 U.S. Dist. LEXIS 4757, at *35-36 (W.D. Mo. Apr. 2, 1998) ("[The] City has not…suggested that additional discovery on this issue is needed. In fact, the City has filed its own Motion for Summary Judgment, indicating its belief that the record is sufficiently devoid of factual dispute to permit a ruling."), *rev'd in part on other grounds* 197 F.3d 321 (8th Cir. 1999); *Hunter v. Ford Motor Co.*, Civ. No. 08-4980, 2010 WL 3385225, at *22 (D. Minn. July 28, 2010) (noting that plaintiff's complaint about the defendant's lack of responses to her discovery is "at odds with her own conduct" in bring a motion for summary judgment two months before the close of discovery). For this reason, courts routinely deny a party further discovery once it has moved for summary judgment. *See, e.g., Filiatrault v. Comverse Tech., Inc.*, 275 F.3d 131, 138 (1st Cir. 2001) (affirming district court's

denial of plaintiff's request for additional discovery after plaintiff filed cross-motion for summary judgment indicating he had sufficient discovery for claims to be decided); *Klos v. Haskell*, 835 F. Supp. 710, 718 (W.D.N.Y. 1993) ("[b]y moving for summary judgment the plaintiff has conceded that he has completed his discovery") (quotations and citation omitted), *aff'd on other grounds*, 48 F.3d 81 (2d Cir. 1995); *Zalewski v. T. P. Builders*, 875 F. Supp. 2d 135, 142 (N.D.N.Y. 2012) (finding plaintiff's argument for more discovery "both disingenuous and unpersuasive" where plaintiff had moved for summary judgment).

Here, Aereo moved for summary judgment just days after serving its Subpoenas on Syncbak. It is hard to imagine what "need" for the vast information it seeks it had in mind knowing that it was about to tell the Court that it was entitled to judgment based on the discovery it already had in hand. This is particularly so given that the arguments set forth in Aereo's summary judgment papers do not depend upon investments made by Plaintiffs, third party authorized technologies, or third-party statements about Aereo. While Aereo has stated that Plaintiffs may raise issues making this information relevant, at the moment any need by Aereo for the requested information is entirely speculative. Courts in this Circuit have rejected such speculative bases for discovery. *See, e.g., Fleck v. Neurosurgical & Spinal Surgery Assocs., P.C.*, No. 10-5072, 2012 WL 1635252, at *3 (D.S.D. May 9, 2012) ("Mere speculation that information might be useful will not suffice."); *Thompson v. Reg'l West Med. Ctr.*, No. 8:06-CV-581, 2007 WL 3232603, at *3 (D. Neb. Oct. 31, 2007) (same). This Court should do the same.

**B.      Aereo Has No Legitimate Need For Confidential Technical Information From A Competitor**

Pursuant to Fed. R. Civ. P. 45(c)(3)(B)(i), a court may quash a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial

information." As such, numerous courts have held that a "clear cut need" or other particularized showing of relevance is required before a court will require that competitively sensitive information be disclosed, particularly to a competitor, even when a protective order is in place. *See, e.g.*, *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 425 (Fed. Cir. 1993) (quashing subpoena calling for sensitive technical information from a competitor); *Convolve*, 2011 WL 17666486, at *2 ("The subpoena calls for confidential technology owned by Seagate. Releasing this information would compromise Seagate's privacy. While a protective order would restrict access to some extent, it would still allow access by counsel, legal assistants, experts, their assistants, the jury, and court staff. Seagate should not have to suffer such disclosure without a clear-cut need and a subpoena narrowly drawn to meet that need.").

Here Aereo has no clear-cut need for testimony and documents concerning "[t]he function and features of Syncbak's technology." Syncbak's services are not at issue in the Action, and the technical underpinnings of its business have no conceivable bearing on any defense advanced by Aereo. In addition, Syncbak has a clear and legitimate interest in keeping its trade secrets out of the hands of a potential competitor. *Convolve*, at *3. Having shown no "clear-cut need" for this information, Aereo's request for it should be denied. *See, e.g., Micro Motion,* 894 F.2d at 1327-28 (subpoena seeking competitively sensitive information from nonparty competitor should have been quashed in its entirety where there was no particularized showing of relevance; "A litigant may not engage in merely speculative inquiries in the guise of relevant discovery.").

### C. The Discovery Sought Has No Bearing On The Parties' Claims Or Defenses

Apart from need, it is unclear how any of the information Aereo seeks tends to prove or disprove the Plaintiffs' claim that Aereo either directly or indirectly infringes their copyrights. What is relevant to such a claim is Aereo's use of the Plaintiffs' copyrighted works, not a Plaintiff's investment in a third party, that third party's technology, and that third party's statements and communications about Aereo and its technology. Indeed, with respect to

information about Syncbak's technology, the New York Magistrate Judge has already ruled in connection with Aereo's request for information regarding technologies similar to Aereo's that Plaintiffs need only provide such documents concerning harm caused by or consumer research on "unlicensed technologies that provide for the transmission of plaintiffs' copyrighted works over the Internet from January 2010 to the present." Klausner Decl. Ex. 5 at ¶ 3 (Order of Mar. 29, 2013). Thus the Judge with the most familiarity with the discovery in the Action has determined that information regarding authorized technologies similar to Aereo's is not relevant and need not be produced. And while the final category of information sought by the Subpoenas at least makes reference to Aereo and its technology, Aereo is obviously best equipped to provide information about how its own service operates, and the hearsay knowledge or impressions of a non-party about Aereo and how its technology works have no bearing on the Action. The possibility that a Syncbak employee may have mentioned the Aereo service in an email or read an article about the Aereo lawsuit online does not justify subjecting Syncbak to the time and expense of conducting a document collection and preparing a corporate designee for deposition. Aereo's service is what it is, regardless of how Syncbak discusses it internally.

The Eighth Circuit has made clear that Courts should curtail overbroad discovery and deny it where there has been no showing that the information sought reasonably bears on the issues in the case. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Because none of the information sought by the Subpoenas bears on the claim that Aereo is infringing the Plaintiffs' copyrights, there is no basis to require Syncbak to comply with the Subpoenas, let alone a strong enough basis to outweigh the significant burden and competitive harm that Syncbak faces from compliance.

## CONCLUSION

For all of the forgoing reasons, Syncbak respectfully requests that this Court enter an order quashing the Aereo Subpoenas. Additionally, because Aereo and its counsel have failed to take reasonable steps to avoid imposing undue burden and expense on Syncbak, Syncbak respectfully requests that, pursuant to Fed. R. Civ. P. 45(c)(1), the Court order Aereo and its

counsel to pay those costs and attorneys' fees incurred by Syncbak in connection with its response to the Aereo Subpoenas, including, without limitation, in connection with its preparation, filing and further pursuit of the present Motion. *See, e.g., Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) (sanctions properly imposed and attorney's fees awarded where party issuing improper subpoena refused to withdraw it, requiring non-party to institute motion to quash).

Dated:  May 23, 2013

Respectfully submitted,


*/s/  TIMOTHY J. HILL*
TIMOTHY J. HILL (#LI0015821)
    Direct Dial: (319) 861-8758
    Email: thill@bradleyriley.com
RAYMOND R. RINKOL JR. (#LI0023851)
    Direct Dial: (319) 861-8780
    Email: rrinkol@bradleyriley.com
    of
BRADLEY & RILEY PC
2007 First Avenue SE
P.O. Box 2804
Cedar Rapids, IA  52406-2804
Phone: (319) 363-0101
Fax:    (319) 363-9824

AND

Tonia Ouellette Klausner (pro hac vice to be sought)
(tklausner@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
(212) 999-5800 (Telephone)
(212) 999-5899 (Facsimile)

*Attorneys for Non-Party Syncbak, Inc.*

Copy to:

Bruce P. Keller
bpkeller@debevoise.com
Matthew E. Fishbein
mefishbe@debevoise.com
Michael R. Potenza
mpotenza@debevoise.com
Debevoise & Plimpton, LLP (NYC)
919 Third Ave., 31st Floor
New York NY 1002

Attorneys for Plaintiffs American
Broadcasting Companies, Inc.; Disney
Enterprises, Inc., CBS Broadcasting Inc.,
CBS Studios Inc., NBCUniversal Media,
LLC, NBC Studios, LLC, Universal
Network Television, LLC, Telemundo
Network Group LLC, WNJU-TV
Broadcasting

David J. Bradford
Jenner & Block LLP (Chicago)
353 N. Clark St.
Chicago, IL 60654
dbradford@jenner.com

Julie A. Shepard
jshepard@jenner.com
Richard L. Stone
rstone@jenner.com
Jenner & Block LLP
633 West 5th St., Suite 3600
Los Angeles, CA 90071

Kenneth David Klein
Hogan Lovells US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
kklein@jenner.com

Scott Block Wilkens
swilkens@jenner.com
Steven R. Englund
senglund@jenner.com
Steven Bernard Fabrizio
sfabrizio@jenner.com
Joshua N. Friedman
joshuafriedman@jenner.com
Jenner & Block, LLP (DC)
1099 New York Ave., N.W., Suite 900
Washington, DC 20001-4412

Attorneys for Plaintiffs WNJU-TV
Broadcasting LLC, WNET, Thirteen, Fox
Television Stations, Inc., Twentieth Century
Fox Film Corporation, WPIX, Inc.,
Univision Television Group, Inc., The
Univision Network Limited Partnership,
Public Broadcasting Service

Leonard Frederick Lesser
Simon Lesser P.C.
420 Lexington Ave.
New York, NY 10170
llesser@simonlesser.com

Attorneys for Movants, IAC/Interactive
Corp., FirstMark IV, L.P., First Round
Capital III, L.P., Highland Capital Partners
LLC, High Line Venture Partners, L.P.,
Lauder Partners LLC, SV Angel
Management Holdings, LLC

Brian Joseph Doyle
byd@fr.com
Elizabeth Eilleene Brenckman
brenckman@fr.com
Fish & Richardson P.C. (NYC)
601 Lexington Ave., 52nd Floor
New York, NY 10022

Jennifer A. Golinveaux
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
jgolinveaux@winston.com

John Clifford Englander
Goodwin Procter, L.L.P.
Exchange Place, 53 State St.
Boston, MA 02109
jenglander@goodwinprocter.com

Kevin Kailun Su
su@fr.com
Mark S. Puzella
msp@fr.com
R. David Hosp
rdh@fr.com
Matthew Carl Berntsen
berntsen@fr.com
Fish & Richardson P.C. (MA)
One Marina Park Drive
Boston, MA 02110

Michael S. Elkin
melkin@winston.com
Seth Eliot Spitzer
sspitzer@winston.com
Thomas Patrick Lane
tlane@winston.com
Winston & Strawn LLP (NY)
200 Park Ave.
New York, NY 10166

Seth D. Greenstein
Constantine Cannon LLP
One Franklin Square
1301 K St., NW, Suite 1050 East
Washington, DC 20005
sgreenstein@constantinecannon.com

Tal Kedem
Ropes & Gray, LLP
1211 Avenue of the Americas
New York, NY 10036
kedem@fr.com

Attorneys for Defendant, Counterclaimant
and Counterdefendant Aereo, Inc., Aereo,
Inc. f/k/a Bamboom Labs, Inc.

Bobbie Wilson
Perkins Coie LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111
bwilson@perkinscoie.com

Attorneys for NDR Providers Netflix, Inc.,
Amazon, Inc., Hulu, Inc.

Markham C. Erickson
Holch & Erickson LLP
400 North Capital St. NW
Washington, DC 20001
merickson@holcherickson.com

Attorneys for Amicus – Electronic Frontier
Foundation

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and
correct copy of this document was served upon the
following persons at the addresses indicated by CM/ECF
electronic notification or by enclosing the same in an
envelope with postage fully paid, and by depositing said
envelope in a United States Postal Depository this **23rd**
day of ___**MAY**_____, 20_**13**__. I declare under
penalty of perjury that the foregoing is true and correct.

_/s/  Julie Pflughaupt_____