# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

|  |  |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., CBS BROADCASTING INC., CBS STUDIOS, INC., NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK TELEVISION, LLC, TELEMUNDO NETWORK GROUP LLC, WNJU-TV BROADCASTING, LLC, | Case No. 1:13-mc-00059-JSS<br><br>Related to Case No: 12-cv-01540 (S.D.N.Y) |
| Plaintiffs, | AEREO INC.'S OPPOSITION TO SYNCBAK, INC.'S MOTION TO QUASH THE SUBPOENA |
| v. |  |
| AEREO, INC., |  |
| Defendant. |  |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................4

    The Litigation and Relevance of CBS's Investment in Syncbak............................4

    The Syncback Subpoenas ...................................................................................5

ARGUMENT..........................................................................................................6

I.    The Information Sought in Aereo's Subpoena Is Directly Relevant to the Issues In the Underlying Action ..................................................................6

    1.    The Orders of the Court in the Underlying Action Support the Relevance of Such Documents and Plaintiffs Have Conceded as Much ...........................................................................................6

    2.    The Requested Information Did Not Become Irrelevant by Virtue of Aereo's Summary Judgment Motion .......................................................10

II.    The Subpoenas Are Not Unduly Burdensome.......................................................10

    1.    The 30(b)(6) Topics are Appropriately Tailored to Obtain Only Relevant Information ...............................................................................10

    2.    The Document Requests Are Properly Tailored and Do Not Impose an Undue Burden ...................................................................................12

III.    The Protective Order in the Underlying Action Should Take Care of Syncbak's Concerns About Competitive Disclosure.............................................15

IV.    Aereo Has Fully Complied With the Rules And Syncbak's Request for Sanctions Should Be Denied.................................................................................16

CONCLUSION.......................................................................................................17

## PRELIMINARY STATEMENT

The document and deposition subpoenas served on Syncbak, Inc. ("Syncbak") are necessary and relevant discovery in the underlying action.[1] Aereo, Inc. ("Aereo") provides consumers access to remote antenna and DVR technology that consumers may use to access television over the Internet. The Underlying Action involves several broadcast networks that sued Aereo, seeking to shut it down claiming its technology infringes the networks' copyrighted, over-the-air, broadcast programming.[2] The Plaintiffs claim that the availability of the Aereo technology to consumers somehow causes them harm. Only a year after the suit was filed, and shortly after Aereo defeated Plaintiffs' request for a preliminary injunction, one of the Plaintiffs CBS Broadcasting, Inc. ("CBS") took a strategic interest in Syncbak, which claims to be a "direct competitor" to Aereo.

The information that Aereo seeks is undoubtedly relevant to the Underlying Action. The allegations of harm to CBS, and other Plaintiffs, are at the heart of the Underlying Action and Aereo is entitled to understand how CBS's investment in Syncbak may affect the harm CBS alleges. To obtain this information, Aereo issued a limited document subpoena and a 30(b)(6) deposition subpoena to Syncbak. In those subpoenas, Aereo sought information on only <u>four</u> narrow topics: (1) CBS's investment in Syncbak; (2) the negotiation of CBS's investment and any agreements reached between CBS and Syncbak; (3) the function and features of the Syncbak technology; and (4) Syncbak's communications, if any, about Aereo. None of these topics were

---

[1] The underlying action is generally referred to as "Underlying Action."

[2] The networks suing Aereo include: American Broadcasting Companies, Inc.; Disney Enterprises, Inc.; CBS Broadcasting Inc.; CBS Studios Inc.; NBCUniversal Media, LLC; NBC Studios, LLC; Universal Network Television, LLC; Telemundo Network Group LLC; WNJU-TV Broadcasting LLC (collectively, "ABC Plaintiffs"); WNET; THIRTEEN; Fox Television Stations, Inc.; Twentieth Century Fox Film Corporation; WPIX, Inc.; Univision Television Group, Inc.; The Univision Network Limited Partnership; PBS (collectively, "WNET Plaintiffs").

overbroad, unduly burdensome, unrelated to the litigation, or available from a single source aside from Syncbak.

It is imperative that Aereo obtain access to the requested information. Aereo may have influenced CBS's decision to invest in Syncbak, or CBS may have decided to sue Aereo due to its desire to invest in Syncbak. Not only that but, such requests will assist Aereo in understanding exactly what harms CBS claims Aereo will cause in the future, *e.g.*, whether CBS claims harm by virtue of Aereo's purported competition with Syncbak.

Moreover, Plaintiffs, including CBS, have taken the position that consumer use of Aereo is going to negatively impact the market for their works (i.e. television shows), including as viewed by consumers online and on their mobile devices. Syncback describes its technology, as "enable[ing] television broadcasters to stream live or recorded television shows to individuals on mobile internet devices such as cell phones and tablet computers." Syncbak's Motion to Quash Third-Party Subpoenas at 2 ("MTQ") (Dkt. 2, filed May 23, 2013). Aereo enables consumers to view recorded television content live or later via the internet and Plaintiffs claim that Aereo harms their interests. Aereo is entitled to explore whether Plaintiffs' claims are motivated more by competitive goals rather than by evidence of harm or likely harm.

The fact that Aereo has moved for summary judgment does not obviate the need for further discovery as Syncbak alleges. This argument is not supported by any case law, and the identical argument made by Plaintiffs in the Underlying Action was rejected. Plaintiffs, including CBS, were ordered to continue the discovery process despite Plaintiffs' position that Aereo was not entitled to discovery due to its summary judgment motion. *See* Attached Declaration of Thomas P. Lane ("Lane Decl."), at Exh. D, Order dated June 12, 2013 ("June 12 Order") ¶ 2 ("To the extent that certain plaintiffs object to defendant's continuing to conduct

discovery notwithstanding defendant's motion for summary judgment, such objections are overruled.").

Syncbak's claims of burden are unsupported and baseless. Aereo's requests are properly tailored to seek only relevant information. In fact, any argument to the contrary is belied by the concession by Plaintiffs in the Underlying Action that the types of documents sought are, in fact, relevant.[3] What's more, during the meet and confer, Syncbak simply refused to negotiate the scope of the requests or topics served. Syncbak cannot now come to Court and complain about their purported breadth.

Lastly, Syncbak's allegations that these subpoenas improperly seek a "free peak [sic] under the hood of, a competitors business," MTQ at 1, are baseless. The subpoenas legitimately seek relevant and responsive discovery, which will be protected by the comprehensive Confidentiality Order entered in this case. Lane Decl., at Exh. E. Further, despite its irrelevance to any issue in this case, Plaintiffs have pursued discovery on virtually every business opportunity ever explored by Aereo, whether or not such opportunity, as here, was consummated.

Because Aereo's requests for discovery are entirely proper, this Court should deny Syncbak's Motion to Quash and order Syncback to produce the requested documents and corporate designees to testify regarding the topics noticed.

---

[3] In contrast, Plaintiffs have pursued discovery on virtually business opportunity ever explored by Aereo, regardless of whether it is relevant to any issue in this copyright case, or whether or not such opportunity, as here, was consummated.

**The Litigation and Relevance of CBS's Investment in Syncbak**

Aereo is a technology platform that allows consumers to use and control technology including an individual remotely-located antenna and remote digital video recorder ("DVR") to access and record over-the-air television broadcasts and watch their recordings at their own convenience on a personal, Internet-connected device, such as a television, smartphone or tablet. *Am. Broad. Co., Inc. v. Aereo, Inc.*, 874 F. Supp. 2d 373, 77 (S.D.N.Y. 2012) ("*Aereo I*"). Plaintiffs in the Underlying Action, including CBS, sued Aereo in the Southern District of New York alleging that Aereo's technology infringes the copyrights of their over-the-air broadcast programs. *See* Klausner Declaration ("Klausner Decl.") Exh. 3 ABC Compl. ¶ 1 (Filed with MTQ).

During the pendency of the suit against Aereo, CBS invested in Syncbak, Inc. (MTQ at 3), a company that created technology that allows CBS and other broadcasters to "stream live or recorded television shows to individuals on mobile Internet enabled devices such as cell phones and tablet computers." MTQ at 2. While Aereo does not currently have information about the exact nature of the Syncbak technology, Plaintiffs claim that the technology is in the same space that Plaintiffs alleged will be harmed by Aereo (i.e. television viewership online and on internet connected devices). *See* MTQ at 2.

According to news reports, CBS "expects to work closely" with its business partners until "Syncbak becomes fully activated and deployed." Syncbak also is reported to offer its platform

---

[4] As an initial matter, Aereo disagrees with the numerous characterizations contained in Syncbak's recitation of the facts in this case. Aereo believes that the Southern District of New York's findings of fact, which were determined after a hearing on a preliminary injunction motion, more accurately represent the facts in the underlying case. For the Court's convenience, a copy of Judge Nathan's July 11, 2012, order is attached hereto. Dkt. No. 109.

to "other broadcast networks and their station groups."[5]  In spite of its claim that it is "very much a start-up operation"  (Declaration of Herb Skoog, dated May 23, 2013, ¶ 5) (Filed with MTQ), Syncbak is reportedly being "tested by more than 100 television stations in 70 markets across 31 broadcast groups representing all major networks, including CBS, ABC, FOX, NBC and The CW."[6]

**The Syncback Subpoenas**

Following CBS's announcement that it was making a "strategic minority investment" in Syncbak, Aereo issued requests for production to CBS, including a request for all of CBS's documents that related to CBS's investment in Syncbak.  Concurrently with that discovery request, Aereo also subpoenaed related information from Syncbak.  On May 9, 2013, Aereo issued four requests to Syncbak in the form of a 30(b)(6) subpoena and a document subpoena in order to better understand (i) its relationship with CBS, (ii) the Syncbak technology, and (iii) the potential impact of Syncbak technology on the alleged harms to the market for the works at issue in the underlying litigation.  *See* Klausner Decl., Exhs. 1 & 2 (Filed with MTQ).  In total, Aereo issued <u>four</u> document requests, and <u>four</u> corresponding 30(b)(6) topics.[7]

During the parties' May 22, 2013, meet and confer, Syncbak drew a line in the sand, and rather than attempt to engage in a good-faith discussion related to the scope of or process for

---

[5] The Deadline Team, "CBS Invests In Streaming Company Syncbak," (Apr. 22, 2013 7:32am PDT), *available at http://www.deadline.com/2013/04/cbs-invests-in-streaming-company-syncbak*.

[6] *Id.*

[7]  Aereo's requests to Syncbak are minimal compared to those served on other third parties by Plaintiff in the Underlying Action.  For example, on December 7, 2012, the Plaintiffs served a subpoena on Google for all documents concerning Aereo or the Aereo Service, including without limitation (i) Google Adwords purchases made by Aereo, (ii) documents related to Aereo's Google Analytics account, and (iii) all reports reflecting Google Analytics data concerning Aereo, including without limitation "Advertising," "Traffic Sources," and "Audience" reports. Although Plaintiffs could have requested those documents directly from Aereo, they specifically argued that "[t]o the extent that there is any overlap between the documents Plaintiffs have requested from Aereo and those requested from Google, Plaintiffs are entitled to seek discovery from Google to verify any similar information provided by Aereo."  WNET Plaintiff's Opposition to Aereo's Motion to Quash Google Subpoena at 6-7.  *See WNET et al. v. Aereo, Inc.*, 5:12-mc-80300-RMW (N.D. Cal. Jan. 9, 2013), Dkt. No. 8.

collecting the discovery Aereo seeks, Syncback took the position that it would not produce anything or any witness, period. Lane Decl. at ¶¶ 8, 9.

## ARGUMENT

"The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible." *See Wegner v. Cliff Viessman, Inc.*, 153 F.R.D. 154, 158 (N.D. Iowa 1994); Fed. R. Civ. P. 26. Indeed, the discovery limitations of Rule 45 are narrow and the information Aereo seeks does not implicate the limitations therein.

Because discovery is broad, the party moving to quash a subpoena bears a particularly heavy burden. *Ferrell v. IBP, Inc.*, No. C98-4047-MJM, 2000 WL 34032907, at *1 (N.D. Iowa Apr. 28, 2000) ("The burden to prove that a subpoena is unreasonable or oppressive rests upon the party seeking to quash or modify"); *see also DatCard Sys., Inc. v. PacsGeaer, Inc.*, No. 11-MC-0025 (DSD/SER), 2011 WL 2491515, at *1 (D. Minn. Apr. 25, 2011) ("A party seeking to quash a subpoena bears 'a particularly heavy' burden.") (quoting *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)). When assessing whether a subpoena should be quashed, courts must weigh the relevance of the requested materials against the burden to the party subject to the subpoena. *See Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 360-362 (8th Cir. 2003). Syncbak has not, by making conclusory assertions of burden, tipped that balance in its favor – in fact, the relevance of the information alone compels a ruling in favor of Aereo.

## I.     The Information Sought in Aereo's Subpoena Is Directly Relevant to the Issues In the Underlying Action

### 1.     The Orders of the Court in the Underlying Action Support the Relevance of Such Documents and Plaintiffs Have Conceded as Much

"A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what

6

constitutes relevant evidence thereunder.'" *Truswal Sys.*, 813 F.2d at 1211-12 (quoting *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421, 425 (1st Cir. 1961)). The court in the underlying action has already held that the types of materials that Aereo seeks, namely those that will assist in understanding the market harm Plaintiffs claim they may suffer, are relevant.

Contrary to Syncbak's erroneous assertion that this information is "not relevant and need not be produced" (MTQ at 16), the Court will be aided by the Court Order below that specifically grants Aereo access to discovery regarding "unlicensed technologies that provide for the transmission of plaintiffs' copyrighted works over the Internet from January 2010 to present" in order to assess the market harms that Aereo allegedly causes. *See* Order, 1:12-cv-01540-AJN-HBP (Mar. 29, 2013) [Dkt. No. 171] ("Mar. 29 Order") at 2.[8]

Indeed, the <u>four</u> requests that Aereo served on Syncbak are appropriately tailored to obtain evidence that is directly relevant to critical issues in the Underlying Action. Those issues include: (1) whether Aereo and other technological platforms that enable a television viewer to watch television on internet connected devices (in the case of Aereo, via a remote antenna and DVR) have impacted or will impact the Plaintiffs' business – including Syncbak – and the market for their works; (2) the extent to which Aereo harms CBS as a purported competitor of Syncbak; and (3) whether CBS's investment in Syncbak demonstrates a long-term view about whether online/mobile television viewing can be measured by the ratings agencies (the Plaintiffs have taken the contrary position in the litigation). Indeed, even Plaintiffs in the Underlying Action have admitted the relevance of these and related points in the context of discovery motions resolved in the Underlying Action:

---

[8] The fact that Syncbak may be "licensed" does not change the relevance analysis in that Plaintiffs allege market harm due to Aereo. Plaintiffs may argue that Aereo affects their success or revenue, and if Aereo does not have this discovery it will be left without a defense.

> "Plaintiffs have agreed to produce to Aereo . . . the following
> documents which encompass relevant documents related to the
> foregoing markets: … (2) [redacted] multiple major Internet video
> delivery services, including Hulu, iTunes, Amazon and Netflix,
> among others, for performance of the works over the Internet or on
> mobile devices through subscription video-on-demand services
> (SVOD) like Hulu Plus, Hulu, and Netflix or for purchase over the
> Internet (called digital download) like Amazon; (3) documents
> relating to negotiations of retransmission consent agreements and
> license agreements that refer to Aereo and Aereo-like Services; (4)
> documents reflecting the impact of Aereo on the potential market
> for Dyle and (5) reports reflecting viewership of Plaintiffs' works
> in homes, online or via mobile devices in 2011 and 2012 from
> Nielsen (which measures in-home viewing). . . ."

Dkt. No. 182, dated April 23, 2013, p. 7-8 of 43. The particular relevance of each of Aereo's

requests to Syncbak is set out below.

*First*, the requests that relate to CBS's investment in Syncbak (Topic 1 and Request 1)

are directly relevant in order to assess CBS's motivation for making its "strategic investment" in

Syncbak. CBS's investment could be guided by CBS's desire to expand television viewership to

those viewers who would prefer to consume their television via online and mobile content

providers. That would obviously be directly relevant to the Underlying Action: CBS is trying

to shut Aereo down, while at the same time promoting (and investing in) a product that they

allege performs a similar function to Aereo. Contrary to Syncbak's position that "similar

technologies" are not relevant (MTQ at 6), Plaintiffs have taken the position that Hulu, Amazon,

Dyle, and Netflix are all relevant based on Plaintiffs view that these are somehow competitors to

Aereo and will allegedly be harmed by Aereo – Syncbak is no different. Syncbak claims to be a

competitor to Aereo, but makes only conclusory arguments that the information sought is

irrelevant. *See, e.g.*, MTQ at 15. As acknowledged by Plaintiffs' position in the Underlying

Action, Syncbak's conclusory statements are without bases.

*Second*, the request related to CBS and Syncbak's negotiations, the terms of the investment, and any agreements between CBS and Syncbak (Topic 2 and Request 2) are relevant for the same reasons. To be sure, such documents will reveal what CBS deems important in the market for its works and its business model for monetizing those works. A strategic investment in a new technology indicates, at minimum, a belief that online and mobile viewing of Plaintiffs' broadcast programming is valuable to it, and further establishes the market and ability to monetize Plaintiffs' programming when delivered in that market. These are all matters that Plaintiffs have put at issue in the litigation.

*Third*, the request regarding the features and functionality of Syncbak (Topic 3 and Request 3) are plainly relevant because it is imperative for Aereo to develop an understanding about what Syncbak does – from a technical standpoint. Plaintiffs' claim in the Underlying Action that Aereo's use of a remote antenna and DVR, and its alleged inability to place geographic limitations on viewers' ability to watch programming are the distinguishing features that allegedly make Aereo illegal. Hence, understanding the differences between the two technologies is directly relevant to understanding the harms that Aereo allegedly causes by virtue of its design, and also assists in determining whether Aereo and Syncbak are competitors, as Syncbak itself claims. Moreover, it is important for Aereo to understand how Syncbak operates, what its plans are, and how CBS plans to expand it, in order to define the market against which Aereo (and Aereo's alleged impact) are to be compared. Syncbak's argument that its "services are not at issue in the Action" is simply false; this request seeks information that is reasonably calculated to obtain discoverable evidence. Fed. R. Civ. P. 26.

*Fourth*, Syncbak argues that Aereo's request for documents concerning Aereo, its CEO, or its technology (Topic 4 and Request 4) is irrelevant because Aereo should have such

information.  MTQ at 16.  The argument is absurd, and misstates the request.  Aereo's request targets existing communications between Syncbak (or its employees and agents) and third parties that discuss Aereo or its technology.  This is especially important in the context of Syncbak's negotiations with CBS, as any discussion of Aereo or similar technologies that came up in the parties' negotiations could have significant importance for Aereo's defenses in the Underlying Action.  In particular, as Plaintiffs concede in the Underlying Action, such documents are relevant to understanding how Aereo harms (or does not harm) Plaintiffs.

### 2. The Requested Information Did Not Become Irrelevant by Virtue of Aereo's Summary Judgment Motion

Syncbak has taken the untenable position that Aereo's requests are irrelevant by virtue of Aereo's moving for summary judgment in the Underlying Action.  MTQ at 13-14.  However, on June 4, 2013, the court in the Underlying Action ordered discovery to proceed, unabated by the summary judgment proceedings, and gave the parties until mid-August to complete discovery.  In doing so, the court rejected Plaintiffs' (and Syncbak's) position that Aereo was not entitled to further discovery because it filed for summary judgment.  Lane Decl., at Exh. D, June 12 Order ("To the extent that certain Plaintiffs object to defendant's continuing to conduct discovery notwithstanding defendant's motion for summary judgment, such objections are overruled.").[9]

## II. The Subpoenas Are Not Unduly Burdensome

Syncbak makes various arguments about how burdensome responding to Aereo's <u>four</u> requests will be, but the subpoenas are appropriately targeted to obtain only that information which is relevant and necessary to discovery in the Underlying Action.

### 1. The 30(b)(6) Topics are Appropriately Tailored to Obtain Only

---

[9] In addition to the court's ruling, it is worth noting that the requests issued to Syncbak relate, in large part, to damages, not liability.  Aereo's summary judgment motion relates to liability only and, while Aereo appreciates Syncbak's confidence (which it shares) that the motion will succeed and damages evidence will be unnecessary, the case has not been bifurcated and all fact discovery has been ordered to be completed in August.  Lane Decl., Exh. D.

### Relevant Information

The purpose of a 30(b)(6) deposition is to have a witness testify to matters "known or reasonably available to the organization." *See Estate of Thompson v. Kawasake Heavy Indus., Ltd.*, __ F.R.D.__, 2013 WL 1248675, at *5-6 (N.D. Iowa Mar. 14, 2013) (quoting Fed. R. Civ. P. 30(b)(6)).  Here, the topics set forth in Schedule A of the deposition notice specify exactly what areas the deposition will cover (all of which are relevant and necessary to Aereo's defense in the Underlying Action).  For all of the reasons stated above, the topics are appropriately tailored under the rules.  Syncbak's argument that they are too burdensome is unavailing.

*First*, Syncbak claims that Aereo's 30(b)(6) subpoena is unduly burdensome because it fails to define the topics with reasonable particularity.  MTQ at 11.  This is simply not true.  The subpoenas <u>do not</u>, as Syncback suggests, require any witness to testify about or commit to memory "any and every" aspect of CBS's investment, "any conversation or email" exchanged during negotiations with CBS, "every detail" of the agreement reached with CBS, "every aspect" of how Syncbak's technology functions, and "every document" and "every communication" that Syncbak possesses regarding Aereo.  MTQ at 11.  Those words do not appear <u>anywhere</u> in Aereo's subpoenas or the topics attached thereto and Syncbak only uses them as dramatic hyperbole to create a burden that does not exist.  Aereo does not ask Syncbak to do anything unusual or ask it to assume a burden beyond that which is required by the Rules.[10]

*Second*, Syncbak alleges that responding to the 30(b)(6) deposition notice would impose

---

[10] Moreover, the cases that Syncbak cites in support of its argument that the 30(b)(6) topics are overbroad are distinguishable because in both cases, the deposition topics were overbroad because they were not exclusive, meaning that the list of topics were "including but not limited to" those topics listed.  *See Reed v. Bennett*, 193 F.R.D. 689 (D. Kan. 2000) (quashing a 30(b)(6) subpoena where the topics were so broad that it was not possible for the party to "identify the outer limits of the areas of inquiry noticed" and, therefore, "compliant designation [was] not feasible."); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 7 Civ. 7350 (BSJ) (KNF), 2008 WL 4104015 (S.D.N.Y. Aug. 28, 2008) (finding plaintiff failed to act diligently with her 30(b)(6) requests because a reference to "etc." in the requests was insufficient to put the corporation on notice about the matters to which it needed to prepare its witness to testify).

an undue burden on it because it would have to send a variety of people that would have to spend significant time preparing for deposition. MTQ at 10. However, the subpoena does not demand three different witnesses; it merely seeks a witness educated on <u>four</u> matters "reasonably available" to Syncbak as required by the Rules.[11] In light of the nature of the topics, which are focused on what Syncback does (which Syncback should know well) and the negotiations with CBS, which occurred just a few months ago, this should not be that difficult.

## 2. The Document Requests Are Properly Tailored and Do Not Impose an Undue Burden

As explained above, the subpoenas issued to Syncbak are properly tailored to elicit information on <u>four</u> topics; the relevance of similar information is unquestioned by the court in the Underlying Action, and by the Plaintiffs. Aereo's requests speak for themselves; they do not seek to open Pandoras' Box, but ask only about straightforward topics related to harms that are at issue in the Underlying Action. Therefore, Syncbak's multiple, unsupported claims of burden with respect to documents are unavailing.

*First*, Syncback complains that it should not be required to produce anything because the requests seek "all documents concerning" CBS's investment, as opposed to asking for particular documents. This is nothing more than a general, form objection, that is at most, related to the scope of documents to be produced, not whether any response is due. Such *pro forma* objections

---

[11] Producing a corporate representative who understands the topics is not an undue burden; it is what is contemplated by the Rules of Civil Procedure. *Illiana Surgery & Med. Ctr., LLC v. Hartford Fire Ins. Co.*, No. 2:07-CV-003-JVB-APR, 2013 WL 2156466, at *5 (N.D. Ind. May 16, 2013) (The business entity has a duty "to prepare its selected deponent to adequately testify not only on subject matters known by the deponent, but also on subjects that the entity should reasonably know") (citation omitted); *see also Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (This duty of preparation "goes beyond matters personally known to that designee or to matters in which that designee was personally involved'. If necessary, the deponent must use documents, past employees, and other resources in performing this required preparation.") (citation omitted); *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1147 (10th Cir. 2007) ("the view that the duty to educate a person. . . is 'prejudicial' to a corporation has not prevailed, and it appears now to be recognized that the Rule 30(b)(6) deponent <u>must</u> be woodshedded with information that was never known to the witness prior to deposition preparation") (citation omitted).

12

should not be used to defeat otherwise relevant discovery.  *See Packard v. Darveau*, No. 4:11-CV-3199, 2012 WL 4443505, at \*3 (D. Neb. Sept. 25, 2012) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objection on those grounds.") (quoting *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 12-13 (D.D.C. 2008)).  Additionally, to require a requesting party to demand "specific documents" would require that the requesting party know what is in the responding party's possession before being able to conduct any discovery.  Aereo, as well as any litigant, has no way of knowing what specific documents are in Syncbak's possession without conducting the requested discovery. Hence, a request framed with "all documents" is intended to capture only those responsive documents located following a reasonable, good faith search of Syncbak's records.[12]

The claim that Aereo's requests are duplicative of discovery sought from CBS in the Action (MTQ at 9) must be rejected.  The discovery that would be obtained is not entirely duplicative, and there is no rule that a party cannot seek to obtain similar documents from third parties.  First, Syncbak's argument assumes that CBS has the same documents and is willing to produce such documents (which, to this day, they have not).[13]  Syncbak's argument also

---

[12] Aereo's request does not encompass privileged or otherwise protected documents.  Should Syncbak reconsider its position with respect to having a fruitful meet and confer, Aereo would be willing to work with it to potentially narrow the topics or agree to procedures to reduce the burden such as agreed key words; however, it cannot do so in an information vacuum in which Syncbak has simply refused any concession or cooperation at all.

[13] On April 24, 2013, Aereo served its Fourth Set of Requests for the Production of Documents and Things on Plaintiffs.  Request number 4 asked for "All documents that refer to, reflect, and/or concern an investment by CBS Broadcasting Inc., and/or CBS Studios Inc. (collectively "CBS"), in Syncbak Inc. ("Syncbak"), including, without limitation, the negotiation of the terms of CBS's investment, the function and features of Syncbak's technology platform, and Syncbak's use of location-based authentication technology."  On May 17, 2013, ABC Plaintiffs responded, objecting to Aereo's request regarding Syncbak as "overly broad, unduly burdensome and seeks documents that are not relevant to the subject matter of the pending action and not reasonably calculated to lead to the discovery of admissible evidence."  Thereafter, CBS produced a total of four documents totaling sixty-six (66)

13

importantly assumes that CBS's records are exactly the same as documents in Syncbak's possession. Because there is no indication that either of these assumptions are correct, Aereo is entitled to seek documents from Syncback. Indeed, Syncbak may have independent analysis that considers Aereo in connection with the CBS investment, which is different than what CBS has.[14] *See Software Rights Archive, LLC v. Google, Inc.*, Nos. 2:07-CV-511 (CE), CV08-0312RMW, 2009 WL 1438249, at *2 (D. Del. May 21, 2009) ("there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party") (internal citations and quotations omitted); *Equal Employment Opportunity Commission v. Rexnord Indus., LLC*, No. 11-CV-777, 2012 WL 2525652, at *8 (E.D. Wis. June 29, 2012) (stating that if the party "either because it refuses or does not have access to them, the Court would reconsider permitting a non-party request for these documents.").[15]

---

pages concerning Syncbak recognizing, at a minimum, that its investment in Syncbak is relevant. Lane Decl. at ¶ 11.

[14] The one sided positions taken by plaintiffs and those aligned with them in this case are astounding. As noted above, Plaintiffs served an overly broad subpoena on Google, before even requesting the same documents from Aereo, and took the position that they are entitled to seek documents from third parties, regardless of whether there is any overlap between documents they could request from Aereo and those that could be produced by a third party. *See* n.7, *supra.*

[15] Syncbak's cases are not to the contrary. Syncbak cites *Asset Value Fund Ltd. P'ship v. Care Group, Inc.*, No. 97 Civ. 1487 (DLC)(JCF), 1997 WL 706320 (S.D.N.Y. Nov. 12, 1997), for the proposition that a court should quash a subpoena that bears no substantive differences from document requests served on a party. MTQ at 9. However, in that case, the subpoena at issue was served upon the defendant's counsel and requested documents that had already been produced or labeled as privileged. Therefore, the court quashed the subpoena as entirely duplicative of discovery already sought and obtained from a party. Syncbak also relies on *Musarra v. Digital Dish, Inc.*, No. 2:05-CV-0545, 2008 WL 4758699 (S.D. Ohio Oct. 30, 2008), for the proposition that a court will not force non-parties to produce when the documents sought are available from parties to the litigation. There, however, the request sought contracts between the non-party and the defendant – documents that both parties would definitely retain in their records. *Id.* at *4. In this case, Aereo seeks "information and details" related to CBS's investment in Syncbak, including internal Syncbak documents that would refer to or describe the negotiations and may even discuss Aereo. Those internal documents in Syncbak's possession would be completely different from the documents available from CBS, especially when CBS has produced almost nothing.

14

Finally, Syncbak argues that in complying with Aereo's requests for documents concerning the function and features of Syncbak's technology and communications regarding Aereo, Syncbak would have to collect and review "all email and essentially every other document in Syncbak's possession." MTQ at 10. While Aereo is in no position to counter Syncbak's factual averments regarding the structure of its e-mail, electronic document storage, or any other record storage system or structure, Syncbak has not offered any alternative, such as identifying individuals most likely involved, keyword searches, etc. In fact, Syncbak refused Aereo's invitation to discuss any alternatives during the meet and confer. Lane Decl. at ¶ 12.

## III.  **The Protective Order in the Underlying Action Should Take Care of Syncbak's Concerns About Competitive Disclosure**

"It is well settled that there is no absolute privilege for trade secrets and similar confidential information; the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure." 8A C. Wright & A. Miller, Federal Practice and Procedure § 2043 at 241 (2010). Only in limited circumstances, may a subpoena may be quashed because confidential information may be disclosed. Indeed, "[i]t is rare for a court to forbid outright the disclosure of trade secrets or confidential commercial information." *SDT Indus.*, 2010 WL 2024735, at *3. Rather, narrowing the scope of the discovery or ordering production subject to a protective order is the approach taken by most courts. *See id.*

Proper safeguards, in the form of a comprehensive protective order, already are in place to protect the confidentiality of the information sought by the subpoenas. *See* Lane Decl., Exh. E, Amended Stipulated Protective Order, 1:12-cv-01540-AJN (Apr. 19, 2012) [Dkt. 35]. The information to be produced will be protected by the same Protective Order that applies to all

discovery produced in the Underlying Action. Syncbak is entitled to apply the appropriate confidential designation to all of its discovery and the parties are all bound by the Order.

Under this Order, any documents, deposition testimony, deposition transcripts and exhibits produced in response to discovery requests in this litigation may be designated by a producing party *or non-party* as "Confidential" or "Highly Confidential." (emphasis added). Any documents produced with these labels are not accessible to the public. Moreover, documents designated "Highly Confidential" may not be disclosed beyond counsel, and certain others necessary to oversee the litigation. Protective Order ¶ 14. Therefore, Syncbak has no cause for concern that its confidential commercial information will be used for any other purpose aside from this litigation with Plaintiffs.[16]

## IV. **Aereo Has Fully Complied With the Rules And Syncbak's Request for Sanctions Should Be Denied**

Syncbak's argument that it is entitled, as a non-party, to special protections from discovery is unsupported by law, and so is its request for sanctions. Sanctions should be awarded only where there has been a "blatant abuse of the subpoena power." *See Alberts v. HCA, Inc.*, 405 B.R. 498, 503 (D.D.C. 2009) (stating that the common thread in sanction awards are parties who have blatantly abused the subpoena power). To be sure, merely issuing a subpoena based on relevance and necessity, is not a basis for sanctions. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429-430 (9th Cir. 2012). Syncbak's conduct is more suitable for sanctions: it filed a baseless motion to quash <u>four</u> document requests, and <u>four</u> deposition topics,

---

[16] Syncbak relies on *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486 (N.D. Cal. May 9, 2011), for the proposition that a court should quash a subpoena seeking confidential information from a non-party where there is no showing of a clear-cut need for the discovery sought. MTQ at 12-13. However, in *Convolve*, the non-party seeking to quash the subpoena was asked to produce its actual product (disk drives) made, sold, or used by the non-party and to conduct a demonstration of its product at the 30(b)(6) deposition. *Id.* at *1. The court determined that such requests were inappropriate because the subpoena effectively required the non-party to act as an "unpaid expert witness in support of defendants' defense." *Id.* at *2. Aereo is asking Syncbak to do no such thing.

16

yet, before doing so, flatly refused to negotiate the scope of the subpoenas. For all of the reasons stated above, Aereo has fully complied with the rules and it has issued, in good faith, subpoenas that seek information relevant to the Underlying Action. There is, simply, no foundation for sanctions.

## CONCLUSION

For all of these reasons, this Court should deny Syncbak's Motion to Quash Third Party Subpoenas and compel it to produce the documents, information, and witnesses according to the Subpoenas.

Dated: June 24, 2013

Respectfully Submitted,

_____/s/ Thomas Patrick Lane_____

Thomas Patrick Lane (Admitted *pro hac vice*)
Seth E. Spitzer (Admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
tlane@winston.com
sspitzer@winston.com

WEINHARDT & LOGAN, P.C.
Mark E. Weinhardt
Danielle M. Shelton
2600 Grand Avenue, Suite 450
Des Moines, IA 50312
mweinhardt@weinhardtlogan.com
dshelton@weinhardtlogan.com

*Attorneys for Defendant Aereo, Inc.*

17

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was
served upon the parties to this action by serving a copy upon
each of the attorneys listed below on June 24, 2013, 2013, by

☑ U.S. Mail           ☐ FAX

☐ Hand Delivered      ☐ Electronic Mail

☐ FedEx/ Overnight Carrier  ☑ CM / ECF

Signature: /s/ Adam Lounsbury

Timothy J. Hill
Raymond R. Rinkol, Jr.
2007 First Avenue SE
P.O. Box 2804
Cedar Rapids, IA 52406
thill@bradleyriley.com
rrinkol@bradleyriley.com

Tonia Ouellette Klausner
Wilson Sonsino Goodrich & Rosati, P.C.
1301 Avenue of the Americas
40th Floor
New York, NY 10019
tklausner@wsgr.com

ATTORNEYS FOR SYNCBAK, INC.

Bruce P. Keller
Matthew E. Fishbein
Michael R. Potenza
Debevoise & Plimpton, LLP (NYC)
919 Third Avenue, 31st Floor
New York, NY 10022
bpkeller@debevoise.com
mefishbe@debevoise.com
mpotenza@debevoise.com

ATTORNEYS FOR AMERICAN
BROADCASTING, COMPANIES, INC.,
DISNEY ENTERPRISES, INC., CBS
STUDIOS, INC., NBCUNIVERSAL MEDIA,
LLC, NBC STUDIOS, LLC, UNIVERSAL
NETWORK TELEVISION, LLC,
TELEMUNDO NETWORK GROUP LLC,
WNJU-TV BROADCASTING

Scott Block Wilkens
Steven R. Englund
Steven Bernard Fabrizio
Joshua N. Friedman
Jenner & Block, LLP (DC)
1099 New York Avenue, NW,
Suite 900
Washington, DC 20001-4412
swilkesn@jenner.com
senglund@jenner.com
sfabrizio@jenner.com
joshuafriedman@jenner.com

ATTORNEYS FOR WNJU-TV
BROADCASTING, LLC., WNET,
THIRTEEN, FOX TELEVISION
STATIONS, INC., TWENTIETH
CENTURY FOX FILM
CORPORATION, WPIX, INC.,
UNIVISION TELEVISION GROUP,
INC., THE UNIVISION NETWORK
LIMITED PARTNERSHIP PUBLIC
BROADCASTING SERVICE

18

David J. Bradford
Jenner & Block LLP (Chicago)
353 N Clark Street
Chicago, IL 60654
dbradford@jenner.com
ATTORNEYS FOR WNJU-TV
BROADCASTING, LLC.


Brian Joseph Doyle
Elizabeth Eilleene Brenckman
Fish & Richardson, P.C.
601 Lexington Avenue, 52nd Floor
New York, NY 10022
byd@fr.com
brenckman@fr.com

ATTORNEYS FOR DEFENDANT, AEREO,
INC.

Kevin Kailun Su
Mark S. Puzella
R. David Hosp
Matthew Carl Berntsen
Fish & Richardson, P.C. (CA)
One Marina Park Drive
Boston, MA 02110
su@fr.com
msp@fr.com
rdh@fr.com
berntsen@fr.com

ATTORNEYS FOR DEFENDANT, AEREO,
INC.

Seth D. Greenstein
Constantine Cannon LLP
One Franklin Square
1301 K. Street NW, Suite 1050 East
Washington, DC 20005
sgreenstein@constantinecannon.com

ATTORNEYS FOR DEFENDANT, AEREO,
INC.

Julie A. Shepard
Richard L. Stone
Kenneth David Klein
Jenner & Block LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
jshepard@jenner.com
rstone@jenner.com

ATTORNEYS FOR WNJU-TV
BROADCASTING, LLC.

Tal Kedem
Ropes & Gray , LLP
1211 Avenue of the Americas
New York, NY 10036
kedem@fr.com


ATTORNEYS FOR DEFENDANT,
AEREO, INC.

John Clifford Englander
Goodwin Procter, L.L.P.
Exchange Place, 53 State St.
Boston, MA 02109
jenglander@goodwinprocter.com

ATTORNEYS FOR DEFENDANT,
AEREO, INC.

Leonard Frederick Lesser
Simon Lesser P.C.
420 Lexington Ave.
New York, NY 10170
llesser@simonlesser.com

ATTORNEYS FOR MOVANTS
IAC/INTERACTIVE
CORP.,FIRSTMARK IV, L.P.,
FIRST ROUND CAPITAL III, L.P.,
HIGHLAND CAPITAL
PARTNERS LLC, HIGH LINE
VENTURE PARTNERS, L.P.,
LAUDER PARTNERS LLC, SV
ANGEL MANAGEMENT
HOLDINGS, LLC

19

Bobbie Wilson
Perkins Coie LLP
Four Embarcadero Center,
Suite 2400
San Francisco, CA 94111
bwilson@perkinscoie.com
ATTORNEYS FOR NDR
PROVIDERS NETFLIX, INC,
AMAZON, INC., HULU, INC.

Markham C. Erickson
Holch & Erickson LLP
400 North Capital St. NW
Washington, DC 20001
merickson@holcherickson.com
ATTORNEYS FOR AMICUS –
ELECTRONIC FRONTIER
FOUNDATION