IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

AMERICAN BROADCASTING
COMPANIES, INC., DISNEY
ENTERPRISES, INC., CBS
BROADCASTING INC., CBS
STUDIOS INC., NBCUNIVERSAL
MEDIA, LLC, NBC STUDIOS, LLC,
UNIVERSAL NETWORK
TELEVISION, LLC, TELEMUNDO
NETWORK GROUP LLC, WNJU-TV
BROADCASTING LLC,

    Plaintiffs,

vs.

AEREO, INC.,

    Defendant,

And Concerning

SYNCBAK, INC.

    Interested Party.

No. 13-MC-0059

RULING ON MOTION TO QUASH

TABLE OF CONTENTS

I.    INTRODUCTION ................................................... 2

II.   PROCEDURAL HISTORY ......................................... 2

III.  RELEVANT FACTS ................................................. 3

IV.  DISCUSSION ........................................................ 5
    A.    Pending Motion for Summary Judgment ................... 5

|  |  |  |
|---|---|---|
| B. | Relevancy | 6 |
| C. | Competitive Injury | 10 |
| D. | Undue Burden | 13 |
| V. | ORDER | 15 |

## I. INTRODUCTION

On the 6th day of August 2013, this matter came on for hearing on the Motion to Quash Third-Party Subpoenas (docket number 2) filed by non-party Syncbak, Inc. on May 23, 2013. Syncbak was represented by its attorneys, Timothy J. Hill and Tonia Ouellette Klausner. Defendant Aereo, Inc. was represented by its attorney, Thomas Patrick Lane. No appearance was made for Plaintiffs.

## II. PROCEDURAL HISTORY

The dispute here arises from an action pending in the United States District Court for the Southern District of New York. There, nine major media companies (including American Broadcasting Companies, Inc., CBS Broadcasting Inc., and NBCUniversal Media, LLC) sued Aereo, Inc., claiming copyright infringement.[1] Plaintiffs assert that Aereo's unauthorized retransmission of Plaintiffs' over-the-air television broadcast programming constitutes a copyright infringement. Aereo argues that its practice of recording and retransmitting programs available over the air at a customer's request does not violate Plaintiffs' copyrights, and Aereo's motion for summary judgment is pending in the New York action.

On May 9, 2013, Aereo served Syncbak, Inc. — a business based in Marion, Iowa — with two subpoenaes. The first commands production of documents in four areas:

---

[1] *American Broadcasting Companies, Inc. et al. v. Aereo, Inc.*, 1:12-cv-01540-AJN-HBP (S.D.N.Y.).

1. All Documents concerning information and details relating to an investment in Syncbak by CBS Broadcasting Inc., CBS Studios Inc. and/or their parents, affiliates or related companies (collectively "CBS").

2. All Documents concerning negotiations between CBS and Syncbak with respect to, among other things, the terms of CBS's investment in Syncbak and any agreements reached between CBS and Syncbak.

3. All Documents concerning the function and features of Syncbak's technology, including but not limited to, Syncbak's use of location-based authentication technology.

4. All Documents concerning communications regarding Aereo, Chaitanya ("Chet") Kanojia, and/or the Aereo Technology.

Subpoena to Produce Documents, Schedule A (docket number 2-4 at 4).

The second subpoena commands Syncbak to produce one or more witnesses to appear and testify regarding the same four areas described in the subpoena for documents.[2]

On May 23, 2013, Syncbak filed the instant motion, asserting that compliance with the subponaes would be unduly burdensome, cause a significant competitive injury, and the information sought is not relevant to Aereo's defense in the underlying action. Aereo argues that the information sought is directly relevant to critical issues in the underlying action, relating primarily to CBS' claim for damages.

### III. RELEVANT FACTS

According to the memorandum of law filed in support of its motion for summary judgment in the underlying action, Aereo provides technology "that enables consumers to

---

[2] See Subpoena to Testify, Schedule A (docket number 2-5 at 4).

accomplish remotely what they could otherwise do at home."[3] That is, according to Aereo, a consumer can capture local over-the-air broadcast television via an antenna, make copies of that programming on a computer, VCR, or DVR, and then view the recorded content via the Internet on an Internet-connected device such as a television, smart phone, or tablet. Aereo argues that it "simply provides technology that allows the consumer to use that same equipment located remotely to accomplish the very same thing: access an individual remote antenna to tune to a local over-the-air broadcast television station that they choose; make an individual, unique copy of that programming using their remote DVR; and transmit that unique copy, only to themselves, on their personal Internet-connected device."[4]

Syncbak, a small start-up company located in Marion, Iowa, is a potential competitor of Aereo. According to a declaration of its vice-president of operations, Herb Skoog, Syncbak "has developed a technology that enables television broadcasters to stream live or recorded television shows to individuals on mobile Internet enabled devices such as cell phones and tablet computers."[5] One prominent distinction between Aereo and Syncbak, however, is that Syncbak's technology "is imbedded at television stations, and thereby operates only with the permission of each television station."[6] While the record is somewhat imprecise, Syncbak is currently being "tested" in several markets throughout the country.

---

[3] Aereo's Memorandum of Law at 3 (docket number 2-14 at 7).

[4] *Id.* at 3-4 (docket number 2-14 at 7-8).

[5] Declaration of Herb Skoog at 1, ¶ 3 (docket number 2-2 at 1).

[6] *Id.* at 1-2, ¶ 3 (docket number 2-2 at 1-2).

On April 22, 2013, CBS announced in a press release that "it has made a strategic minority investment in Syncbak."[7] The announcement states that "[u]sing location-based authentication technology, Syncbak enables local television stations to stream their signal to in-market consumers." Aero responded three days later by serving Syncbak with subpoenaes seeking details regarding the transaction and Syncbak's technology.[8]

## IV. DISCUSSION

### A. Pending Motion for Summary Judgment

On May 14, 2013, Aereo filed a motion for summary judgment in the underlying action pending in New York. That motion has been fully submitted, and Aereo concedes that the discovery sought from Syncbak will have no effect on its motion for summary judgment. Furthermore, Aereo's attorney agreed at the instant hearing that if Aereo is granted summary judgment in New York, then the instant discovery dispute becomes moot. Accordingly, it can be reasonably argued that the Court should defer ruling on Syncbak's motion to quash until after the New York court has ruled on Aereo's motion for summary judgment. *See, e.g., Filiatrault v. Comverse Technology, Inc.*, 275 F.3d 131, 138 (1st Cir. 2001) (finding that the filing of a motion for summary judgment "almost invariably indicates that the moving party was not prejudiced by a lack of discovery"); *Zalewski v. T.P. Builders, Inc.*, 875 F. Supp. 2d 135, 142 (N.D.N.Y. 2012) (finding that an argument regarding the need for discovery after filing a motion for summary judgment "is both disingenuous and unpersuasive").

Aereo notes, however, that the magistrate judge in New York ordered that discovery continue, notwithstanding the pendency of the motion for summary judgment.

---

[7] Press Release (docket number 2-9 at 1-2).

[8] The subpoenaes were first generated in the Southern District of Iowa. *See* docket numbers 2-10 and 2-11.

On June 4, 2013, a conference was held before United States Magistrate Judge Henry Pitman to discuss various discovery disputes and scheduling issues. Judge Pitman acknowledged that "there is some tension between moving for summary judgment and seeking discovery at the same time."[9] Nonetheless, Judge Pitman expressed concern that if discovery was stayed and the motion for summary judgment was subsequently denied, then it would leave the schedule "in chaos." Accordingly, Judge Pitman held that discovery would continue, with the deadline for completion of fact discovery extended to August 14, 2013. The order provided that "[t]o the extent that certain plaintiffs object to defendant's continuing to conduct discovery notwithstanding defendant's motion for summary judgment, such objections are overruled."[10]

### B. Relevancy

As a threshold matter, the Court must determine whether the discovery sought by Aereo is relevant to any issue in the underlying action. A party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. FED. R. CIV. P. 26(b)(1). The sole purpose of discovery is to "assist[] in the preparation and trial, or to settlement, of litigation disputes." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). Experience has shown that pretrial discovery "has a significant potential for abuse." *Id.* Accordingly, the Federal Rules confer broad discretion on the district court to decide whether discovery should be limited or prohibited. *Id.*

---

[9] Proceedings before J. Pitman on June 4, 2013, 81:12-14 (docket number 19-6 at 3).

[10] June 12, 2013 Order of J. Pitman at 2, ¶ 2 (docket number 14-5 at 3).

Here, Aereo argues that details regarding CBS' investment in Syncbak, and information regarding Syncbak's geo-locating technology, is relevant to various claims and defenses in the underlying action. Aereo asserts that the information which it seeks is "undoubtedly relevant" to the underlying action, and that it "is imperative" that it obtain the requested information. Syncbak argues, however, that Aereo is simply trying to obtain confidential technical and financial information from a potential competitor.

Aereo asserts that the information sought is "appropriately tailored to obtain evidence" regarding (1) whether technological platforms that enable a television viewer to watch television on internet connected devices "have impacted or will impact the Plaintiffs' business," (2) the extent to which Aereo, as a purported competitor of Syncbak, "harms CBS," and (3) whether CBS' investment in Syncbak "demonstrates a long-term view about whether online/mobile television viewing can be measured by the ratings agencies."[11] In making a judgment regarding relevancy, Aereo urges me to defer to the New York court, citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 513 F.2d 1207, 1211-12 (Fed. Cir. 1987) ("A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be 'especially hesitant to pass judgment on what constitutes relevant evidence thereunder.'").

To support its argument that the discovery it seeks regarding Syncbak is relevant, Aereo points to an order entered by Judge Pitman on March 29, 2013, following a conference held on March 21. Judge Pitman denied Aereo's application to compel production of documents concerning Plaintiffs' revenue, financial data, and advertising revenue, and documents concerning consumer use of antennas. However, the order required Plaintiffs to provide "documents regarding damages caused by or consumer research on . . . unlicensed technologies that provide for the transmission of plaintiffs'

---

[11] Aereo's Opposition (docket number 14) at 7.

copyrighted works over the Internet from January 2010 to present."[12] Syncbak argues, on the other hand, that comments made by Judge Pitman at the March 21 hearing, together with his subsequent order, support a conclusion that he *denied* further discovery regarding licensed or authorized technologies, such as Syncbak. Specifically, Judge Pitman stated:

> The issue under fair use is whether an unauthorized, unlicensed use or use that's not permitted by the copyright holder constitutes fair use. If you include that, if you include licensed or permitted uses within that, you're necessarily talking about something that's not of the sort, not conduct of the sort engaged in by the defendant. If it were conduct of the sort engaged in by the defendant, you wouldn't even get to the question of fair use because the conduct would be licensed. So I'm limiting those three categories to unlicensed remote DVR's and unlicensed technologies that provide for the transmission of plaintiffs' copyrighted works over the internet.

Proceedings before J. Pitman on March 21, 2013, 81:12-24 (docket number 19-3 at 8).

As can be seen above, Judge Pitman distinguished between "unauthorized, unlicensed use" and "licensed or permitted uses" when addressing the discovery dispute. Consistent with his comments at the hearing, Judge Pitman's order compels discovery on "unlicensed technologies" only. The March 21 conference with Judge Pitman occurred before CBS announced its investment in Syncbak, and the extent to which Judge Pitman may believe that CBS' investment, or Syncbak's geo-locating technology, is relevant to the underlying action is unknown to me. It appears unlikely based on his prior ruling, however, that Judge Pitman would conclude that CBS' investment in a start-up company which embraces an "authorized use" business model is relevant to the underlying action.

It should also be noted that Aereo sought similar discovery from Plaintiffs in the underlying action. In its fourth request for production of documents, Aereo asked

---

[12] March 29, 2013 Order of J. Pitman at 2, ¶ 3 (docket number 2-8 at 2).

8

Plaintiffs to produce all documents concerning CBS' investment in Syncbak, the negotiation of the terms of CBS' investment, and "the function and features of Syncbak's technology platform, and Syncbak's use of location-based authentication technology."[13] Counsel for Plaintiffs objected on May 17, 2013, asserting the request was "overly broad, unduly burdensome and seeks documents that are not relevant to the subject matter of the pending action."[14] At the instant hearing, Aereo's counsel advised the Court that with respect to Syncbak, CBS "has produced four documents amounting to about 60 pages, and I would say approximately half of those are completely redacted." Aereo has not moved in the underlying action to compel discovery regarding Syncbak. Syncbak speculates this is because of Judge Pitman's March 29 order.

The copyright action pending in New York is legally and factually complex. Plaintiffs have produced "somewhere upwards of a million or two million pages of documents" in response to Aereo's discovery requests. Obviously, I make no judgment regarding what may or may not be found relevant if the case proceeds to trial. I am also mindful of the fact that "relevance" for discovery purposes has a broader meaning than that applied at trial. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Nonetheless, the Court believes that CBS' investment in Syncbak, and Syncbak's geo-location technology, has marginal relevance to the underlying action, if any. The fundamental issues in the underlying action are whether Aereo's technology — which captures, records, and retransmits Plaintiffs' over-the-air broadcasts — violates Plaintiffs' copyright interests; and, if so, Plaintiffs' damages caused by the violation. That CBS has invested in a potential competitor — which employs technology embedded at the broadcast

---

[13] Aereo's Fourth Set of Requests for the Production of Documents at 3, ¶ 3 (docket number 2-12 at 3).

[14] Plaintiffs' Responses and Objections at 6 (docket number 19-5 at 6).

9

stations with their permission — is not relevant to whether Aereo's technology violates copyright laws. Similarly, it has little relevance, if any, to CBS' alleged damages.

## C. Competitive Injury

Both Aereo and Syncbak seek to provide consumers with the ability to watch television on mobile Internet-enabled devices, such as cell phones and tablet computers. Aereo, which is apparently up-and-running in the New York City area, captures over-the-air broadcast signals at a customer's request using an antenna, makes a copy of the program, and transmits it to the customer at their request. Syncbak, which is still in the testing stages, embeds its technology at television stations and, operating with the stations' permission, transmits the programming to a customer's mobile Internet device. That is, while Aereo and Syncbak employ significantly different business models and technologies, they hope to provide substantially the same service.

In its subpoenas, Aereo asks Syncbak to provide, among other things, "all documents" regarding its technology, including the use of "location-based authentication." When the Court expressed concern at the instant hearing that the request for "all documents" was overly broad, Aereo's attorney advised the Court that he was limiting the request "simply to the location-based authentication technology." When asked what, specifically, he was asking for, Mr. Lane responded: "Specifically, what it is they're doing in terms of that location-based technology." I asked Mr. Lane if he wanted "a description of 'what' but not the 'how,'" and Mr. Lane responded that "the 'what' may lead me to the 'how,' but I don't even understand 'what' yet, so I would like to start with the 'what.'" In a declaration filed in resistance to the instant motion, Herb Skoog, vice-president of operations for Syncbak, states that to his understanding "Aereo does not use any location-based authentication technology." According to Mr. Skoog, "[e]xplaining to a direct competitor how our location-based authentication technology works would be

the equivalent of Coca Cola providing its secret formula to Pepsi."[15] Syncbak's attorney acknowledged at the hearing that "Syncbak has a means of authenticating the location of the users so that they can only watch local programming."

Regarding Syncbak's "location-based authentication technology," the "what" appears fairly clear. Syncbak apparently has a means of authenticating the location of the viewers, so they can only watch local programming.[16] Because Aereo apparently does not have similar technology, disclosing the "how" of Syncbak's location-based technology would require it to reveal confidential commercial information. To protect a person subject to a subpoena, the court may grant a motion to quash the subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(c)(3)(B)(i).

Generally, a party moving to quash a subpoena has the burden of proving that compliance would be unduly burdensome. *Heat & Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1025 (Fed. Cir. 1986). If the subpoena requires disclosure of confidential commercial information, however, then "the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action." *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325 (10th Cir. 1981). The Court must then balance the need for the information against the injury which may result from its disclosure. *Id.* A non-party should not suffer disclosure of confidential technology information "without a clear-cut need and a subpoena narrowly drawn to meet that need." *Convolve, Inc. v. Dell, Inc.*, 2011 WL 1766486 (N.D. Cal.) at *2.

---

[15] Declaration of Herb Skoog at 3, ¶ 7 (docket number 2-2 at 3).

[16] Apparently, verifying the location of viewers is important for purposes of determining Nielsen ratings and, consequently, advertising rates.

In my view, the details of how Syncbak authenticates the location of its users is irrelevant to the question of whether Aereo's technology violates Plaintiffs' copyrights. Syncbak's technology is embedded at the stations and operates with their permission. Aereo's technology captures an over-the-air signal and operates without the broadcasters' permission. I fail to see why it is necessary for Aereo to obtain documents regarding Syncbak's location-based authentication technology in order to defend the copyright action in New York. On the other hand, disclosure of this highly confidential information to a competitor may cause Syncbak's substantial injury. In other words, Aereo's need for the information is substantially outweighed by the potential harm to Syncbak. "If proof of relevancy or need is not established, discovery should be denied." *Id.*

The Court reaches the same conclusion regarding Aereo's request for all documents relating to CBS' investment in Syncbak, and the negotiations leading to that investment. Moreover, CBS has equal access to those documents, and Aereo has asked CBS to produce the documents in the underlying action. Apparently, some documents have been produced, although Mr. Lane did not believe they included the "transactional document." As Aereo notes, the Court in New York is in the best position to determine the relevance of the requested documents. If Aereo believes they are critical to its defense, then it may seek production of the documents from CBS. *See General Parts Distribution, LLC v. Perry*, 2013 WL 3223374 (D. Minn.) at *4 ("it may be appropriate to prohibit a party from obtaining discovery from a non-party if that same discovery is available from another party to the litigation"); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena."); *Cantrell v. U.S. Bioservices Corp.*, 2009 WL 1066011 (W.D. Mo.) at *2 (finding that a subpoena directed to a non-party was unduly burdensome when the requested documents could be obtained from the opposing party); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975,

978 (Fed. Cir. 1993) ("The district court could properly require Herman Miller to seek discovery from its party opponent before burdening the nonparty Allsteel with this ancillary proceeding.").

In considering motions to quash, courts routinely give special consideration to non-parties. *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927 ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs") (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)); *General Parts Distribution*, 2013 WL 3223374 (D. Minn.) at *2 (in a case seeking confidential commercial information, "concern for the burden upon non-parties carries 'special weight.'"); *Convolve*, 2011 WL 1766486 (N.D. Cal.) at *2 ("Non-parties may occasionally have to testify and give evidence for and against litigants, but non-parties should not be burdened in discovery to the same extent as the litigants themselves.").

The Court concludes that Aereo's "need" for the requested information to defend the underlying action is slight, while the "injury" to Syncbak in disclosing its highly confidential commercial information to a competitor may be substantial. Accordingly, Aereo's request for production of all documents concerning the function features of Syncbak's technology, including but not limited to, Syncbak's use of location-based authentication technology, will be denied for that reason.

### D. Undue Burden

Syncbak also argues that compliance with Aereo's subpoenaes would place an undue burden on a non-party. If a subpoena subjects a person to undue burden, then it must be quashed by the Court. FED. R. CIV. P. 45(c)(3)(A)(iv). That is, "*[e]ven if relevant*, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the

need of the person seeking discovery of the information." *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990) (emphasis in original).

Factors which may be considered by the Court in determining whether an undue burden exists include: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Precourt*, 280 F.R.D. at 467. Syncbak has the burden of proving that compliance with the subpoena creates an undue burden. *Id.* When a non-party is subpoenaed, however, the Court is "particularly mindful" of Rule 45's undue burden and expense cautions. *Id. See also Miscellaneous Docket Matter No. 1*, 197 F.3d at 927 ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs").

In his declaration, the vice-president of operations for Syncbak states that "Syncbak does not store emails or documents on a central server, so we would have to hire an outside vendor to come in and collect separately from each employee, and then pay attorneys to review the collected emails and documents."[17] As a small start-up company, Syncbak claims that it does not have the financial resources to comply with the subpoenas and that the process "would be extremely disruptive to have every employee's computer tied up during the collection."[18]

The Court concludes that information relating to CBS' investment in Syncbak, and the negotiations leading to that investment (items 1 and 2 of the subpoenaes), have only marginal relevance to the underlying action, and can be obtained from CBS in any event. Information regarding Syncbak's location-based authentication technology (item 3 of the

---

[17] Declaration of Herb Skoog at 2-3, ¶ 5 (docket number 2-2 at 2-3).

[18] *Id.* at 3, ¶ 5 (docket number 2-2 at 3).

subpoenaes) is not relevant to the underlying copyright infringement case pending in New York. Aereo's request for documents which refer in any way to Aereo (item 4 of the subpoenaes) is simply a fishing expedition. Aereo has not shown a substantial need for the requested documents, and disclosure of the documents may cause Syncbak a competitive injury. Furthermore, compliance with the subpoenaes would be expensive for Syncbak, a non-party. For all of these reasons, the Court concludes that compliance of the subpoenaes would place an undue burden on Syncbak and the subpoenaes must, therefore, be quashed.

## V. ORDER

For the reasons set forth above, the Motion to Quash Third-Party Subpoenas (docket number 2) filed by non-party Syncbak, Inc. is **GRANTED**.

DATED this 17th day of September, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA