IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| AMERICAN BROADCASTING COMPANIES, INC., DISNEY ENTERPRISES, INC., CBS BROADCASTING INC., CBS STUDIOS INC., NBCUNIVERSAL MEDIA, LLC, NBC STUDIOS, LLC, UNIVERSAL NETWORK TELEVISION, LLC, TELEMUNDO NETWORK GROUP LLC, WNJU-TV BROADCASTING LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>AEREO, INC.,<br><br>Defendant,<br><br>And Concerning<br><br>SYNCBAK, INC.<br><br>Interested Party. | No. 13-MC-0059<br><br>ORDER FOR ATTORNEYS' FEES |

TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . 2

III. RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     A.  Did Aereo Take Reasonable Steps to Avoid Imposing
         Undue Burden or Expense on Syncbak? . . . . . . . . . . . . . . 7
     B.  What Appropriate Sanction should be imposed on Aereo? . . . . . 10

V.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION

This matter comes before the Court on the Motion for Award of Attorneys' Fees Incurred (docket number 25) filed by Syncbak, Inc. on October 1, 2013, the Opposition (docket number 27) filed by Aereo, Inc. on October 18, and the Reply (docket number 28) filed by Syncbak on October 28. Syncbak's request for oral argument is denied. The motion will be decided without oral argument, pursuant to Local Rule 7.c.

## II. PROCEDURAL HISTORY

On May 10, 2013, Aereo served Syncbak with two subpoenaes. The first subpoena commanded the production of documents in four areas. The second subpoena commanded Syncbak to produce one or more witnesses to appear and testify regarding the same four areas. Aereo served the subpoenaes in connection with an action which it is defending in the United States District Court for the Southern District of New York.

On May 23, Syncbak — which is not a party in the underlying action — filed a motion to quash the subpoenaes. Syncbak also asked that it be reimbursed for its costs in connection with the subpoenaes, including attorney fees. On September 17, the Court granted Syncbak's motion to quash. The Court concluded that some of the information sought was not relevant to the underlying action, disclosure of some of the information may unnecessarily cause injury to a competitor, and compliance with the subpoenaes placed an undue burden on Syncbak. The Court did not address Syncbak's request for attorney fees.

Syncbak then filed the instant motion, asking the Court to award an eye-popping $164,401.42 in attorney fees and expenses. Syncbak argues that because Aereo failed to take reasonable steps to avoid imposing an undue burden or expense on Syncbak, the Court must impose an appropriate sanction, including attorney fees. Aereo argues that it acted reasonably in issuing the subpoenaes, and that it acted "more than reasonably" in attempting to negotiate in good faith to reduce any claimed burden. Accordingly, Aereo

asserts that Syncbak is not entitled to attorney fees. Alternatively, Aereo argues that Syncbak's claim is excessive.

## III. RELEVANT FACTS

Many of the facts underlying the instant dispute are set forth in the Court's Ruling on Motion to Quash (docket number 24) and will not be repeated here. The Court will attempt to supplement the facts, however, as they pertain specifically to the issuance of the subpoenaes, the filing of the motion to quash, and the discussions leading to the hearing on the motion to quash.

On March 1, 2012, nine major media companies, including CBS Broadcasting, Inc., sued Aereo in the United States District Court for the Southern District of New York, alleging copyright infringement. (Aereo's motion for summary judgment in that case is now pending.) On April 22, 2013, CBS issued a press release, announcing that it had made "a strategic minority investment in Syncbak, a technology company that affords broadcasters new content distribution opportunities on emerging platforms." Two days later, on April 24, Aereo served CBS with a fourth set of requests for the production of documents. Among other things, Aereo asked CBS to produce all documents concerning its investment in Syncbak "including, without limitation, the negotiation of the terms of CBS's investment, the function and features of Syncbak's technology platform, and Syncbak's use of location-based authentication technology." Two days after that, on April 26, Syncbak's office manager accepted service of two subpoenaes issued in the United States District Court for the Southern District of Iowa, with a cover letter from Aereo's attorney dated April 25.[1] The subpoenaes had a response date of May 17.

---

[1] There is a factual dispute regarding whether Aereo tendered the deposition fees when the subpoenaes were served. Tracy Read, officer manager at Syncbak, avers in her declaration that when she accepted service, "the process server did not provide a check or any other form of payment." In his declaration in resistance to the motion to quash, attorney Thomas Patrick Lane states that "[a]ccording to Aereo's local process server, the
(continued...)

3

On May 9, Seth Spitzer, an attorney for Aereo, and Tim Hill, an attorney for Syncbak, spoke on the phone regarding the subpoenaes. In an email sent later that day, Hill confirmed that Aereo was withdrawing its records and deposition subpoenaes issued in the Southern District of Iowa, and would have new subpoenaes issued in the Northern District of Iowa. Hill agreed to accept service of the reissued subpoenaes. The email also states that "[y]ou may mail the Rule 45(b)(1) fee to Syncbak, via me at my address below." Spitzer responded the same day, confirming the agreement. The reissued subpoenaes were received and accepted by Hill the next day. Four days later, on May 14, Aereo filed a motion for summary judgment in the underlying New York action.

Late in the afternoon on Friday, May 17, Tonia Ouellette Klausner, another attorney for Syncbak, contacted Spitzer by email to schedule a "meet and confer" call for Monday, May 20. Klausner expressed "concerns" regarding Aereo's need for the information in light of its recently filed motion for summary judgment, the commercially sensitive nature of the information being sought, and the undue burden which would be placed on Syncbak in complying with the subpoenaes. When Spitzer did not respond to the email over the weekend, Klausner wrote to him again on Monday. Because he was in trial, Spitzer suggested that they meet and confer early the following week. Klausner noted that the response date on the subpoenaes was that Friday (May 24) and suggested an extension of the response dates. Spitzer then proposed that they meet after 3:00 p.m. on May 23. Klausner replied that because the response date was May 24, such a meeting would be "too late." Counsel eventually agreed to meet and confer on May 22.

According to Klausner's account of the May 22 telephonic meeting, she requested that Aereo withdraw the subpoenaes because it had already filed its motion for summary

---

[1](...continued)
daily witness fee was tendered along with the subpoena." The proof of service signed by the process server states that "I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of $40.00."

4

judgment and had "no need" for the subpoenaed information. Aereo refused, noting that discovery had not been stayed in the underlying action and the deadline for completion of discovery was June 14. Aereo argued that the information was needed because the Plaintiffs in the underlying action might file their own motion or respond to Aereo's motion by raising issues relating to the information sought in the subpoenaes. Klausner then suggested that the due dates on the subpoenaes be extended until after the Plaintiffs in the underlying action had responded to Aereo's motion for summary judgment. Aereo's attorney rejected that suggestion. Klausner also told Aereo's counsel that the subpoenaes were overbroad and that compliance would be unduly burdensome for Syncbak. Klausner noted that much of the information requested was duplicative of the information sought by Aereo in its fourth set of requests for production of documents directed to CBS.

According to Aereo, Syncbak took the position that it was not going to provide discovery in light of Aereo's pending motion for summary judgment. The parties disagree regarding whether they were willing to discuss narrowing the scope of the subpoenaes. Aereo claims that "Syncbak refused to negotiate the scope or contents of the subpoenas, relying on its position that Aereo was no longer entitled to any discovery as a result of the pending summary judgment motion." Syncbak claims that Aereo took the position that "if Syncbak was going to take the position that no discovery from Syncbak should be had in light of Aereo's pending motion for summary judgment, they did not want to spend the time trying to come up with more specific and less burdensome requests."

The next day, on May 23, Syncbak filed its motion to quash. The motion was heard at the courthouse in Cedar Rapids on August 6. Aereo asserts that after the motion to quash was briefed, and prior to the hearing, it "repeatedly offered to negotiate the scope of the subpoenas." Specifically, on July 31, Spitzer contacted Klausner in an attempt to reach "a resolution agreeable to both Aereo and Syncbak." In a declaration filed in opposition to the instant motion for attorneys' fees, Lane asserts that Klausner "declined

to negotiate or even engage in a meaningful conversation." The next day, August 1, Klausner sent Spitzer an email thanking him "for reaching out to me" regarding Aereo's proposal to narrow the scope of the subpoenaes. Klausner advised Spitzer, however, that Syncbak would not negotiate on those issues unless Aereo agreed to pay its legal fees.

> [B]efore trying to negotiate those issues, we need to know whether, as part of the proposed resolution, Aereo would agree to reimburse Syncbak for the legal fees it has been forced to incur in connection with the subpoenas to date (about $140,000) and agree to cover Syncbak's costs to retain a vendor to run keyword searches, plus its future fees in connection with producing the requested documents and in connection with any deposition that Aereo would be reserving the right to seek at a later date.

Email from Klausner to Spitzer, dated August 1, 2013. Spitzer replied the following day, rejecting Syncbak's demand, stating: "If you want to have a rational conversation about producing relevant documents, please let us know. Otherwise, we will leave it to the court."[2]

In his declaration, Lane states that on August 5 and 6, both prior to and after the oral argument, he again offered to negotiate the scope of the subpoenaes with Syncbak's counsel. According to Lane, Syncbak's counsel declined.

## IV. DISCUSSION

To deter discovery abuse, the FEDERAL RULES OF CIVIL PROCEDURE require a party serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense" on the person subject to the subpoena. FED. R. CIV. P. 45(c)(1).[3] To ensure compliance,

---

[2] Email from Spitzer to Klausner, dated August 2, 2013.

[3] The Court notes parenthetically that RULE 45 will be amended effective December 1, 2013. The provisions found in RULE 45(c)(1) will be renumbered as RULE 45(d)(1). The amendment also makes it clear that "the issuing court" means "the court for the district where compliance is required." The amendment is intended to clarify RULE 45,
(continued...)

6

the court "must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply." *Id.* Accordingly, the Court is required to address two questions: First, did Aereo take reasonable steps to avoid imposing an undue burden or expense on Syncbak; and, if not, what appropriate sanction should be imposed.

### A. Did Aereo Take Reasonable Steps to Avoid Imposing Undue Burden or Expense on Syncbak?

Syncbak argues that it was unreasonable for Aereo to serve the subpoenaes in the first instance. On March 21, 2013, a hearing was held in the underlying action before Magistrate Judge Henry Pitman regarding certain discovery disputes. Judge Pitman subsequently filed an order on March 29. Judge Pitman denied Aereo's application to compel production of certain financial information, including total revenue, sources of revenue, expenses, and profit or loss on a program-by-program basis. Judge Pitman also denied Aereo's application to compel further production of documents relating to "aggregate revenue and financial data." Regarding Aereo's application to compel production of documents associated with "similar or related technologies," Judge Pitman ordered production of documents relating to in-home DVRs and "unlicensed technologies" that provide for the transmission of Plaintiffs' copyrighted works. In his comments at the hearing, Judge Pitman distinguished "licensed or permitted uses" and advised the parties that he was limiting the discovery to unlicensed technologies.

On April 22, CBS announced its investment in Syncbak. Two days later, Aereo served additional discovery requests on CBS, seeking information regarding the investment, Syncbak's "technology platform," and Syncbak's use of location-based authentication technology. Two days after that, rather than waiting for CBS's response, Aereo served Syncbak with subpoenas seeking essentially the same information. At that

---

[3](...continued)
but does not substantively change the RULE as it applies here.

point, it was necessary for Syncbak — which is not a party to the underlying action — to hire an attorney to respond to the subpoenaes. In order to respond effectively, it was necessary for Syncbak's attorneys to familiarize themselves with the underlying action in New York, which is factually and legally complex.

While Syncbak's attorneys were considering their response, Aereo filed a motion for summary judgment in the underlying action on May 14. On May 17, Klausner contacted Spitzer and suggested that the discovery be delayed in view of Aereo's recently filed motion for summary judgment. Aereo's attorney conceded at the hearing in Cedar Rapids that if Aereo is successful on its motion for summary judgment, then the discovery sought from Syncbak becomes moot. Rather than wait for a ruling on the motion for summary judgment, however, Aereo pressed forward with its discovery request, as set forth in the subpoenaes. Aereo claims that it was forced to pursue discovery because the discovery had not been stayed in New York.

As I indicated in my ruling on Syncbak's motion to quash, I believe the information sought by Aereo in the subpoenaes is of doubtful relevance. I fail to see how the transactional document reflecting CBS's investment in Syncbak, or the negotiations leading to that document, are relevant to the issue of whether Aereo's technology breaches Plaintiffs' copyrights. While Aereo argues that the information may be relevant to CBS's claim for damages, it appears to me that the relevance is marginal, at best. Instead, the subpoenaes appear to be an effort by Aereo to "peek behind the curtain" regarding Syncbak's technology.

Even if Aereo believed that the information being sought was relevant to its defense of the underlying action, however, the majority of courts have held that "good faith" will not avoid sanctions if the party failed to take reasonable steps to avoid imposing an undue burden.

> The question is not whether the subpoenas were issued in "good faith." Rather, the issue is whether issuance of the

> subpoenas violated the duty imposed by Rule 45(c)(1), FED. R. CIV. P. A subpoena may be issued in "good faith" but still may be improper if the party serving the subpoena has failed to "take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena."

*Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D. Mass. 2000). *See also Georgia-Pacific LLC v. American Intern. Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190 (S.D. Ohio 2010) ("So long as the duty to avoid imposing an undue burden is violated, it is of no consequence that the party or attorney who served the subpoena acted in good faith."); *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 679 (N.D. Okla. 2008) ("[G]ood faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has issued the subpoena in violation of the duty imposed by that Rule."). *But see Alberts v. HCA Inc.*, 405 B.R. 498, 502-03 (D.D.C. 2009) (citing cases suggesting that sanctions should not be imposed unless the court finds "bad faith").

Even if Aereo acted in good faith, the subpoenaes were overly broad. The document subpoena commanded production of "all documents" concerning CBS's investment, "all documents" concerning the negotiations leading to the investment, "all documents" concerning the "function and features" of Syncbak's technology, including its location-based authentication technology, and "all documents" concerning communications regarding Aereo or its principal.

The Court concludes that Aereo did not take reasonable steps to avoid imposing an undue burden or expense on Syncbak. *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 472 (D.S.D. 2011) ("When a nonparty is subpoenaed, the court is particularly mindful of Rule 45's undue burden and expense cautions."). Aereo filed a request for production of documents in the underlying action, but did not wait for a response by CBS and has not moved to compel production of those documents in the underlying action. Based on Judge Pitman's prior comments and ruling, Aereo had reason to suspect that discovery regarding CBS's investment and information regarding licensed

or permitted uses would not be compelled. Rather, Aereo served Syncbak — a non-party — with subpoenaes seeking essentially the same information, thereby forcing Syncbak to incur unnecessary expense. The parties disagree regarding their respective efforts to limit the scope of the subpoenaes after they were served, and the Court will address that issue in the context of determining an appropriate sanction.

### B. What Appropriate Sanction should be imposed on Aereo?

When a party fails to take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena, the court *must* impose an appropriate sanction, which *may* include *reasonable* attorney's fees. FED. R. CIV. P. 45(c)(1). The Court concludes that an award of attorney fees is an appropriate sanction here. The more difficult question is what attorney fee is "reasonable." Syncbak asks that it be awarded a whopping $164,401.42. Aereo argues that Syncbak's request for fees is "inflated beyond reason."

In responding to Aereo's subpoenaes, Syncbak retained the law firm of Wilson Sonsini Goodrich & Rosati, P.C. ("WSGR") in New York, and the law firm of Bradley & Riley P.C. ("B&R") in Cedar Rapids. The principal attorney handling the case in New York was Tonia Ouellette Klausner, a member of the firm with 20 years' experience in business and consumer litigation. Her billable rate is $790 per hour. Also working on the case was Selim Day, a WSGR partner who has the "lead relationship" with Syncbak, who charged $890 per hour. Two WSGR associates, Catherine S. Grealis and Robert A. Glunt, charged $510 per hour and $570 per hour, respectively. Two WSGR paralegals also worked on the case, charging $240 per hour and $230 per hour. In Cedar Rapids, the case was assigned to Timothy J. Hill, a shareholder with B&R, and Raymond R. Rinkol, a B&R associate.[4] Hill charged $240 per hour and Rinkol charged $175 per hour.

---

[4] Another B&R shareholder, William T. McCartan, billed .3 hours on the case.

In responding to the subpoenaes, Syncbak's attorneys billed 370.3 hours, totaling $173,940, through the time of hearing. The bills reflect a "discount," however, of $10,577, leaving a balance of $163,363. Syncbak's attorneys also incurred expenses of $1,038.42, resulting in a total charge of $164,401.42. It is that amount which Syncbak claims should be paid by Aereo.

In addition to 95.8 hours for "investigation" and 50 hours for hearing preparation and attending the hearing, Syncbak asks that it be reimbursed for 49.6 hours of legal research and 172.9 hours for drafting pleadings, motions, and briefs. The Court notes that Glunt billed 26.2 hours for researching, drafting, revising, and editing the motion to quash from May 6 to May 9. That is, a substantial amount of time was spent preparing the motion to quash even *before* the revised subpoenaes were accepted by Hill on May 10. On May 22 and 23, Rinkol and Hill devoted more than 10 hours to further revisions of the motion to quash.

There are multiple instances of excessive or unnecessary billing. For example, on May 8, Rinkol charged 6 hours for addressing the fact that the subpoenaes had been mistakenly filed in the Southern District of Iowa. Rinkol charged 3 hours on May 21 to the issue of having Klausner admitted *pro hac vice* in the Northern District of Iowa. This is a routine matter and should have been accomplished in a fraction of that time. On July 8, 9, 10, and 12, it appears that 6.5 hours were devoted to perfecting an *unopposed* motion for leave to file an overlength reply brief. It appears that 9.1 hours were charged for preparing and "rehearsing" Herb Skoog, vice-president of operations for Syncbak, to testify at the August 6 hearing. Skoog's declaration had been previously submitted with Syncbak's motion to quash, however, and his testimony was not offered at the hearing. The bill submitted by WSGR includes 13 hours charged by Selim Day. The Court notes that all of the charges are in one-half hour increments. The only description of Day's

contribution is his "attention to" the matter at hand. Several entries state simply "attention to litigation." Day's charges alone total $11,570.

The Court concludes that 318 billable hours for investigating, conducting legal research, and drafting a motion to quash, and an additional 50 hours for preparing for and attending a hearing, is simply excessive. According to the declaration of Thomas Patrick Lane, "Aereo's attorneys spent approximately 60 hours opposing this motion and negotiating with Syncbak's counsel."[5] While the underlying copyright action in New York may be complex, a motion to quash a subpoena is not. Even though Syncbak is a non-party to the underlying action, the issues raised in its motion were hardly unique.

The Court recognizes that every case is different and precedent is of comparatively little value in determining what constitutes a reasonable attorney fee under the circumstances of a particular action. The Court has been unable to find any case, however, where Rule 45(c)(1) sanctions have remotely approached the amount being sought by Syncbak here. In *Precourt*, the Court concluded that the service of a subpoena on a nonparty justified attorney fees associated with a successful motion to quash. The Court noted that "[t]here are complex issues in this case, including intricate relevancy determinations and whether the information sought by GOPAC is BPI's proprietary information." 280 F.R.D. at 473. In awarding sanctions, however, the Court reduced the claim from approximately 50 hours to 20 hours. *Id.* ("Notwithstanding the complexity of the issues, 49.7 hours is an unreasonable amount of time to prepare a motion to quash. A reduction in the number of hours, to 20 hours, yields a more reasonable number of hours worked on this particular motion."). *See also Georgia-Pacific*, 278 F.R.D. at 193 (awarding attorneys' fees and expenses in the amount of $15,391.25); *Huntaire*, 254 F.R.D. at 680 (awarding attorney fees in the amount of $14,745.38); *Diamante*, 194 F.R.D. at 23 (awarding $3,240 as a sanction for violating the duty imposed by Rule

---

[5] Declaration of Thomas Patrick Lane at 6, ¶ 17 (docket number 27-1 at 6).

45(c)(1)); *In Re Digital Resource, LLC*, 246 B.R. 357, 373 (8th Cir. BAP 2000) (awarding attorney fees in the amount of $1,432.25).

After considering all of the facts and circumstances, the Court concludes that Aereo should be required to pay Syncbak $30,000, plus expenses, toward its reasonable attorney fees. While the Court recognizes that this does not reimburse Syncbak for all of the attorney fees incurred in resisting the subpoenaes, I believe it represents a reasonable contribution by Aereo toward Syncbak's filing of the motion to quash.

### V. ORDER

IT IS THEREFORE ORDERED that judgment shall enter in favor of Syncbak, Inc. and against Aereo, Inc. in the amount of Thirty-One Thousand Thirty-Eight Dollars forty-two cents ($31,038.42) representing a reasonable contribution by Aereo to the attorney fees incurred by Syncbak in responding to the subpoenaes.

DATED this 19th day of November, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA